2001 ME 154

**STATE of Maine**

v.

**Brian S. HASKELL Sr.**

Supreme Judicial Court of Maine.

Argued: Sept. 11, 2001.
Decided: Nov. 5, 2001.

**6**

Norman R. Croteau, District Attorney, Richard R. Beauchesne, Asst. Dist. Atty. (orally), South Paris, for State.

Douglas D. Hendrick, Esq. (orally), Cornish, for defendant.

Panel: WATHEN, C.J.,* and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] Brian S. Haskell Sr. appeals from the application of the Sex Offender Registration and Notification Act of 1999 ("SORNA")[1] in his case after a judgment of conviction was entered in the Superior Court (Oxford County, *Pierson, J.*) on a jury verdict finding him guilty of unlawful sexual contact in violation of 17–A M.R.S.A. § 255(1)(C) (Supp.2000) (Class C).[2] Haskell contends that: (1) SORNA, as it applies to him, is an *ex post facto* law that is prohibited by the Constitutions of the State of Maine and of the United States and (2) the Sentencing Court's alleged specification of him as a "sex offender," rather than as a "sexually violent predator," makes void its determination that he is subject to SORNA provisions. We disagree and affirm.

## I. FACTS & PROCEDURAL HISTORY

[¶ 2] On September 13, 2000, the jury found that Haskell was guilty of the charge of unlawful sexual contact with a child pursuant to 17–A M.R.S.A. § 255(1)(C). Accordingly, on September 22, 2000, the trial court sentenced Haskell to an imprisonment term of three years, with all but fourteen months suspended. The court also imposed a probationary term of four years. In addition, pursuant to 34–A M.R.S.A. §§ 11221 *et seq.*, the court notified and ordered Haskell to satisfy, upon his release, the registration provisions of SORNA. The sole basis of Haskell's appeal stems from the court's

---

* Wathen, C.J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

1. The sex-offender registration requirements at issue in this case can be found at 34–A M.R.S.A. §§ 11221 *et seq. See infra* notes 10 & 13 for the relevant provisions.

2. Section 255 provides, in pertinent part:
   1. A person is guilty of unlawful sexual contact if the person intentionally subjects another person to any sexual contact, and:

   . . . .
   C. The other person, not the actor's spouse, has not in fact attained the age of 14 years and the actor is at least 3 years older;

   . . . .
   2. Unlawful sexual contact is a Class D crime, except that a violation of . . . subsection 1, paragraph C . . . is a Class C crime.
   . . . .

   17–A M.R.S.A. § 255(1)(C) (Supp.2000).

application of SORNA provisions to his case.[3]

## II. DISCUSSION

### A. Standard of Review

[¶ 3] We review a ruling on the validity of a statute, a matter of law, *de novo*. *Rideout v. Riendeau*, 2000 ME 198, ¶ 14, 761 A.2d 291, 297 (citing *Estate of Jacobs*, 1998 ME 233, ¶ 4, 719 A.2d 523, 524). Further, our review is guided by the familiar principle that "[a] statute is presumed to be constitutional and the person challenging the constitutionality has the burden of establishing its infirmity." *Id.* (quoting *Kenny v. Dep't of Human Servs.*, 1999 ME 158, ¶ 7, 740 A.2d 560, 563).

[¶ 4] We must assume that the Legislature acted in accord with constitutional requirements if the statute can reasonably be read in such a way, notwithstanding other possible unconstitutional interpretations of the same statute. *Id.* ¶ 14, 761 A.2d at 297–98 (citing *Portland Pipe Line Corp. v. Envtl. Improvement Comm'n*, 307 A.2d 1, 15–16 (Me.1973)). "Our role in reviewing the constitutionality of a statute must necessarily be limited by the facts in the case before us." *Id.* ¶ 15, 761 A.2d at 298. "We may not reach beyond those facts to decide the constitutionality of matters not yet presented." *Id.* (citations omitted). We, therefore, address the constitutionality of the statute before us in the context of the facts found by the trial court.

### B. SORNA is Not Penal in Nature—*Ex Post Facto* Doctrine does not apply.

#### 1. Introduction.

[¶ 5] The Maine sex offender registration and notification laws comprise three Acts.[4] The original 1991 Act, entitled the Sex Offender Registration Act, limited the class of registrants to only those persons who had a gross sexual assault conviction that involved a victim who was under 16 years of age at the time of the commission of the crime. 34–A M.R.S.A. § 11002(2) (Supp.2000); P.L.1991, ch. 809, § 1 (effective June 30, 1992); *see also* 17–A M.R.S.A. § 253 (1983) (Gross sexual misconduct). In 1995, the Legislature enacted provisions expanding the registration requirements to include "individual[s] found not criminally responsible for committing gross sexual assault by reason of mental disease or defect if the victim had not, in fact, attained 16 years of age at the time of the crime." 34–A M.R.S.A. § 11103(5) (Supp.2000); P.L.1995, ch. 680, § 13 (effective July 4, 1996). Finally, in 1999, the Legislature enacted SORNA to further expand the registration requirements to encompass individuals who have been convicted of a number of other offenses, including unlawful sexual contact under 17–A M.R.S.A. § 255(1)(C), the crime for which Haskell was convicted. *See* 34–A M.R.S.A. § 11203(7)(A) (Supp. 2000); P.L.1999, ch. 437, § 2 (effective September 18, 1999).

---

**3.** Although his "notice of appeal" suggests Haskell is appealing from the judgment of conviction, he does not discuss that issue in his brief. Instead, Haskell's appeal focuses entirely on the appropriateness of the sentencing court's application of SORNA provisions to him; even if SORNA was found to be inapplicable in this case, such a finding does not affect the underlying conviction. Haskell's failure to brief or argue any basis of error regarding the judgment of conviction, therefore, constitutes a waiver of that issue. *State v. Barlow*, 320 A.2d 895, 898 (Me.1974) (holding that, though appellant's points on appeal list other issues, his failure to brief or argue them constitutes a failure to preserve those issues).

**4.** The three enactments were consolidated into one law by P.L.2001, ch. 439, § 000–5 or 6.

■ [¶ 6] Because he committed the crime on August 8, 1999, and SORNA did not become effective until September 18, 1999, Haskell argues that applying SORNA in his case constitutes an *ex post facto* application of a penal statute. Indeed, the enactment by our state Legislature of any *ex post facto* law is constitutionally prohibited.[5] A criminal statute will violate these constitutional prohibitions of *ex post facto* legislation if: "(i) the new statute punishes as a crime an act that was innocent when done, or (ii) makes more burdensome the punishment for a crime after its commission, or (iii) if it deprives one charged with a crime of a defense available according to law at the time the act was committed." *State v. Chapman,* 685 A.2d 423, 424 (Me. 1996) (citing *State v. Joubert,* 603 A.2d 861, 869 (Me.1992)).

[¶ 7] If SORNA measures are deemed civil rather than criminal in nature, however, they do not implicate the *Ex Post Facto* Clause. *See Baker v. Town of Woolwich,* 517 A.2d 64, 69 (Me.1987). The threshold question for us to consider, therefore, is whether SORNA is civil or penal in nature.

2. Civil–Criminal Analysis.

[¶ 8] In *Hudson v. United States,* 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), the Supreme Court promulgated the so-called "intent-effects" test for distinguishing between civil and criminal penalties, stating:

Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. A court must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. Even in those cases where the legislature has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty.

In making this latter determination, the factors listed in *Kennedy v. Mendoza–Martinez, 372 U.S. 144, 168–169, 83 S.Ct. 554, 567–568, 9 L.Ed.2d 644 (1963),* provide useful guideposts, including: (1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of *scienter* "; (4) "whether its operation will promote the traditional aims of punishment-retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned." It is important to note, however, that "these factors must be considered in relation to the statute on its face," *id. at 169, 83 S.Ct. at 568,* and only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.

*Hudson v. United States,* 522 U.S. 93, 99–100, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (additional citations and quotation marks omitted); *see also Kansas v. Hendricks,* 521 U.S. 346, 361, 117 S.Ct. 2072, 138

---

5. The U.S. Constitution states, in part: "No state shall ... pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts ...." U.S. Const. art. I, § 10, cl. 1. The Maine Constitution provides: "The Legislature shall pass no bill of attainder, ex post facto law, nor law impairing the obligation of contracts, and no attainder shall work corruption of blood nor forfeiture of estate." ME Const. art. I, § 11.

L.Ed.2d 501, (1997) (applying similar principles to determine whether sex offender commitment statute violated *Ex Post Facto* Clause).[6]

[¶ 9] The *Mendoza–Martinez* list of considerations, however, is neither exhaustive nor dispositive. *See United States v. Ward*, 448 U.S. 242, 249, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). In fact, the Supreme Court has intimated, in other cases, that the most significant question under the effects stage of the analysis is whether the law, "while perhaps having certain punitive aspects, serve[s] important nonpunitive goals." *United States v. Ursery*, 518 U.S. 267, 290, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996).[7] *See also Russell v. Gregoire*, 124 F.3d 1079, 1091 (9th Cir.1997) (stating, *Mendoza–Martinez*'s list of considerations is helpful but is not exhaustive or dispositive), *cert. denied*, 523 U.S. 1007, 118 S.Ct. 1191, 140 L.Ed.2d 321 (1998); *Moore v. Avoyelles Corr. Ctr.*, 253 F.3d 870, 873 (5th Cir.2001) (stating that " '[t]he most significant question under [the effects] stage of

---

**6.** In *State v. Myrick*, 436 A.2d 379 (Me.1981), upon which the State relies, we promulgated a different test for determining whether a statute was penal or civil in nature. *State v. Myrick*, 436 A.2d 379, 383 (Me.1981). Adopting the analysis of a First Circuit decision, we stated that the proper test for determining whether a statute was penal in nature is as follows:

> [I]f the past conduct which is made the test of the right to engage in some activity in the future is not the kind of conduct which indicates unfitness in the activity, it will be assumed, as it must be, that the purpose of the statute is to impose an additional penalty for the past conduct. If, however, the past conduct can reasonably be said to indicate unfitness to engage in the future activity the assumption will be otherwise.

*Id.* (quoting *Cases v. United States*, 131 F.2d 916, 921 (1st Cir.1942)). The test put forth in *Myrick* and *Cases*, however, is much narrower in scope and pertains to instances where a later statute proscribes a right to affirmatively take part in, or practice, a given activity because of a prior misconduct. *See Myrick*, 436 A.2d at 380 (upholding statute that prohibits persons who have been convicted of a crime punishable by one year or more imprisonment from owning or having in his or her possession a gun); *Cases*, 131 F.2d at 921 (stating Federal Firearms Act is not unconstitutional as an *"ex post facto* law," as applied to one who had been convicted of aggravated assault and battery before the passage of the act, on ground that it imposed on him an additional penalty for such crime, since Congress sought by the act to protect the public by preventing the transportation and possession of firearms and ammunition by those who, by their past conduct, had demonstrated their unfitness to be trusted with such dangerous instrumentalities).

The authorities upon which the *Cases* court relied in establishing the test have a similar fact pattern, i.e., prior conduct precludes right to participate in future activity. *See Hawker v. New York*, 170 U.S. 189, 198–99, 18 S.Ct. 573, 42 L.Ed. 1002 (1898) (upholding statute that made a prior felony conviction conclusive evidence of the lack of fitness to practice medicine); *Dent v. West Virginia*, 129 U.S. 114, 128, 9 S.Ct. 231, 235, 32 L.Ed. 623 (1889) (upholding statute requiring every practitioner of medicine in W.Va. to obtain a certificate from the State Board of Health that he or she is a graduate of a reputable medical college; this is not a situation where a statute was "designed to deprive parties of their right to continue in their professions for past acts or past expressions of desires and sympathies, many of which had no bearing upon their fitness to continue in their professions.").

In this case, there is no prohibition of a future conduct. These cases and their progeny, therefore, are inapposite to the present circumstances. The State's reliance on *Myrick* is misplaced.

**7.** We note that *Ursery* was a double jeopardy case. Although the Supreme Court warned against lifting a test for punishment from one constitutional provision and applying it to another, the Court applied the "intent-effects" test in *Kansas v. Hendricks*, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) to both the Double Jeopardy and *Ex Post Facto* Clauses. *See Russell v. Gregoire*, 124 F.3d 1079, 1087 n. 6 (9th Cir.1997). Presumably, therefore, the factor noted in *Ursery* is applicable to the present *ex post facto* analysis.

the ['intent-effects'] analysis' is whether the law 'while perhaps having certain punitive aspects, serve[s] important nonpunitive goals.'").

[¶ 10] Thus, our first task is to discern whether the intent of the Legislature in enacting the sex-offender notification program was to create a civil or criminal penalty. If we determine that the legislature intended to establish a civil penalty, we must then inquire whether there exists the "clearest proof" that the measure is so punitive in purpose or effect as to override the Legislature's intent.

a. Legislative Intent.

██ [¶ 11] An analysis of the legislative history of SORNA and its sister Acts reveals that the Maine legislature intended SORNA to be a civil remedy. First, the legislative intent to establish a nonpunitive measure is ascertainable from the simple fact that the Legislature placed the statute in the civil code as opposed to the criminal code. *See Hendricks*, 521 U.S. 346, 361, 117 S.Ct. 2072 (stating that the Kansas Legislature's objective to create a civil proceeding is evidenced by its placement of the Sexually Violent Predator Act within the Kansas probate code, instead of the criminal code). Second, the civil nature of the Acts is evident in the Legislature's description of the 1991 Act as "An Act to Ensure Continuing Knowledge of the Identity and Whereabouts of Convicted Sex Offenders," P.L.1991, ch. 809, and its unambiguous expression in the 1995 Act that the legislation's purpose was "to protect the public safety by enhancing access to information concerning sex offenders." 34–A M.R.S.A. § 11101 (Supp.2000). The description and purpose suggest that the Acts were enacted to protect the public, not to punish the sex offender.

[¶ 12] Although SORNA carries none of these legislative expressions, the expressions of the prior Acts are attributable to it because SORNA is merely an expansion of those Acts, primarily enacted to conform the existing Maine Acts to federal law on the same issue. *See* L.D. 1721, Summary (119th Legis.1999). Specifically, the Legislature, in enacting SORNA, stated:

This bill [creating SORNA] provides for the registration of sex offenders in conformance with federal law. The bill does the following.

1. It expands the scope of the definition of "sex offender" for the purposes of registration.

2. It adds "sexually violent predator" as a new category.

3. It increases the type of identifying information for sex offenders and sexually violent predators that must be kept by the State Bureau of Identification and directs the bureau to forward registration information to the Federal Bureau of Investigation for inclusion in the national sex offender database.

. . . .

*Id.* Nothing in any of the Acts suggests that the Legislature sought to create anything other than a civil registration and notification procedure designed to protect the public from harm. The legislative intent in enacting SORNA, therefore, is remedial, not criminal.

b. Effects.

██ [¶ 13] The next phase of the examination requires us to determine whether the party challenging the statute demonstrates by the "clearest proof" that the notification scheme is so punitive in purpose or effect as to overcome the Legislature's civil intent.[8] *People v. Malchow,*

8. Haskell has not met his burden of demon-    strating by "the clearest proof" that SORNA

193 Ill.2d 413, 250 Ill.Dec. 670, 739 N.E.2d 433, 439 (2000). Applying the *Ursery* and *Mendoza–Martinez* factors to the present legislation demonstrates that SORNA's effect is not so punitive that it defeats the Legislature's civil intent.

▮ [¶ 14] For the purposes of the *Ursery* factor, SORNA serves important non-punitive goals because it is aimed at protecting the public from sex offenders. *Gregoire*, 124 F.3d at 1091. It is well-established that "[a] law serving nonpunitive goals 'is not punishment, even though it may bear harshly on one affected.'" *Moore*, 253 F.3d at 873, (quoting *Flemming v. Nestor*, 363 U.S. 603, 614, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960)).

[¶ 15] Applying the *Mendoza–Martinez* factors further supports a finding that SORNA requirements do not have a punitive effect.[9] First, SORNA does not place an *affirmative* disability or restraint on sex offenders. Their movements and activities are not restricted in any way. *See Malchow*, 250 Ill.Dec. 670, 739 N.E.2d at 439; *see also Hendricks*, 521 U.S. at 363, 117 S.Ct. 2072 (stating, "[a]lthough the civil commitment scheme at issue here does involve an affirmative restraint, 'the mere fact that a person is detained does not inexorably lead to the conclusion that

the government has imposed punishment.'").

[¶ 16] Second, SORNA cannot be historically regarded as a punishment. Although the "[d]issemination of information about criminal activity has always held the potential for substantial negative consequences for those involved in that activity," it cannot be compared with the public shaming, humiliation, and banishment of the colonial times, which all involve more than the dissemination of information. *E.B. v. Verniero*, 119 F.3d 1077, 1099 (3rd Cir.1997) (rejecting appellant's analogy comparing notification laws to historical acts of public ridicule), *cert. denied*, 522 U.S. 1109, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998). The "sting" of laws like SORNA "results not from [a person] being publicly displayed for ridicule and shaming but rather from the dissemination of accurate public record information about [that person's] past criminal activities and a risk assessment by responsible public agencies based on that information." *Id.* The "[d]issemination of [accurate information about past criminal activity] in and of itself ... has never been regarded as punishment when done in furtherance of a legitimate governmental purpose," such as that which SORNA presents.[10] *Id.* at 1099–1100.

is so punitive that it negates the Legislature's civil intent; in fact, neither he nor the State mentioned the so-called "intent-effects" test on appeal. Nevertheless, we make an independent analysis of the *Mendoza–Martinez* and *Ursery* factors to assess whether SORNA is so punitive in purpose or effect as to overcome the Legislature's civil intent.

9. For a good discussion of the effects test as it pertains to *ex post facto* challenges to sex offender laws, see *People v. Malchow*, 193 Ill.2d 413, 250 Ill.Dec. 670, 739 N.E.2d 433 (2000), *Russell v. Gregoire*, 124 F.3d 1079 (9th Cir.1997), *cert. denied*, 523 U.S. 1007, 118 S.Ct. 1191, 140 L.Ed.2d 321 (1998), *Doe v. Pataki*, 120 F.3d 1263 (2nd Cir.1997), *cert.*

*denied*, 522 U.S. 1122, 118 S.Ct. 1066, 140 L.Ed.2d 126 (1998); *Artway v. Attorney General of State of New Jersey*, 81 F.3d 1235 (3rd Cir.1996), and *State v. Noble*, 171 Ariz. 171, 829 P.2d 1217 (1992).

10. Only classifications involving a suspect or quasi-suspect class, or impacting certain fundamental constitutional rights, are subject to heightened scrutiny. *Artway*, 81 F.3d at 1267 (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). Other classifications, like those presented by SORNA, need only be rationally related to a legitimate government goal. *Id.* (citing *Chapman v. United States*, 500 U.S. 453, 465, 111 S.Ct. 1919, 114 L.Ed.2d 524

[¶ 17] Third, the provisions at issue do not come into play based on a finding of *scienter.* "The only requirement for the [registration and] notification provisions to become effective is that the offender is released into the community. Accordingly, this factor does not indicate a punitive intent." *Malchow,* 250 Ill.Dec. 670, 739 N.E.2d at 440.

[¶ 18] Fourth, the SORNA's operation does not promote the two primary objectives of criminal punishment: retribution and deterrence. *See Hendricks,* 521 U.S. at 361–62, 117 S.Ct. 2072. As noted above, the intention of the Legislature in passing SORNA was to protect the public from sex offenders. "The limited release of information to those likely to encounter sex offenders could hardly be characterized as 'retribution.'" *Malchow,* 250 Ill.Dec. 670, 739 N.E.2d at 440. *See also Russell,* 124 F.3d at 1089 (stating the Washington sex offender registration requirements do not have a retributive purpose but do have legitimate nonpunitive purposes). Further, SORNA is not retributive because it does not affix culpability for prior criminal conduct. *Hendricks,* 521 U.S. at 362, 117 S.Ct. 2072 (stating Kansas Sex Offender Commitment Act not retributive for same reason). "Instead, such conduct is solely used for evidentiary purposes, either to demonstrate that a 'mental abnormality' exists or to support a finding of future dangerousness." *Id.,* 521 U.S. at 363, 117 S.Ct. 2072.

[¶ 19] As to the deterrence factor, the *Malchow* court noted:

[I]t is possible that the Notification Law would have a deterrent effect. However, it is unlikely that those not already deterred from committing sex offenses by the possibility of a lengthy prison term will be deterred by the additional

possibility of community notification. Moreover, even an obvious deterrent purpose does not necessarily make a law punitive.

*Malchow,* 250 Ill.Dec. 670, 739 N.E.2d at 440 (citation omitted); *accord Russell,* 124 F.3d at 1089 (stating, "[a]lthough registration arguably has a deterrent effect, [*United States v.*] *Ursery* [, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996) ] declared that deterrence can serve both civil and criminal goals.... *Ursery* also noted that the fact that a sanction may be tied to criminal activity alone is insufficient to render the sanction punitive."). We agree with the *Malchow* court and conclude that SORNA's purpose is to protect the public. It does not significantly promote either retribution or deterrence.

[¶ 20] Fifth, the behavior to which SORNA applies is, in fact, already a crime; the registration and notification requirements only relate to those people who have committed criminal actions. Nevertheless, the fact that SORNA's requirements are triggered by a criminal conviction is common to all regulatory disabilities that result from a prior conviction, i.e., the loss of the right to vote in some jurisdictions. *Doe v. Pataki,* 120 F.3d 1263, 1281 (2nd Cir.1997), *cert. denied,* 522 U.S. 1122, 118 S.Ct. 1066, 140 L.Ed.2d 126 (1998). The Second Circuit noted that

The disabilities mandated by the laws challenged and upheld in several Supreme Court decisions have also been triggered solely by the existence of a prior conviction. *See e.g., Hawker* [*v. New York* ], 170 U.S. [189,] 196–97, 18 S.Ct. [573,] 576–77[, 42 L.Ed. 1002 (1898) ] (prior felony conviction conclusive evidence of lack of fitness to practice medicine). As with the laws upheld in *Hawker* ..., the offender's prior conviction is used by the SORA "solely for

(1991) (applying rational basis test to classifi-

cation based on nature of offense)).

evidentiary purposes," *i.e.,* as a presumption that the offender is likely to re-offend in the future.

*Pataki,* 120 F.3d at 1281 (additional citations omitted). The Supreme Court stated in *Hendricks*

> We have previously concluded that an Illinois statute was nonpunitive even though it was triggered by the commission of a sexual assault, explaining that evidence of the prior criminal conduct was 'received not to punish past misdeeds, but primarily to show the accused's mental condition and to predict future behavior.'

*Hendricks,* 521 U.S. at 362, 117 S.Ct. 2072. In addition, registration and notification helps locate sex offenders who commit new crimes; the law, therefore, is no more onerous than necessary to protect the public from harm, which is a permissible regulatory goal. *See People v. Ansell,* 25 Cal.4th 868, 108 Cal.Rptr.2d 145, 24 P.3d 1174, 1186 (2001); *cf. Malchow,* 250 Ill. Dec. 670, 739 N.E.2d at 440 (stating that,

because the notification requirements only relate to those people who have committed criminal actions, the fifth factor of the *Mendoza–Martinez* test weighs in favor of the defendant; however, the notification requirements were deemed constitutional when considering the *Mendoza–Martinez* factors in whole).

[¶ 21] Sixth, SORNA has a purpose, other than punishment, that can rationally be associated with the law. As set forth above, SORNA's purpose is to protect the public; the law was not intended as punishment. Seventh, the law does not appear excessive in relation to the goal of protecting the public from sex offenders by enhancing access to information concerning sex offenders. 34–A M.R.S.A. § 11101 (Supp.2000). The information is not widely disseminated. It is only disseminated to certain State agencies and to members of the public "who the department determines appropriate to ensure public safety." 34–A M.R.S.A. §§ 11142 & 11143 (Supp.2000); [11] *see also Pataki,* 120

---

11. 34–A M.R.S.A. § 11251 incorporates the notification provisions of the 1995 Act in the SORNA. *See* 34–A M.R.S.A. § 11251 (Supp. 2000). The notification requirements of the 1995 Act provide, in pertinent part, as follows:

§ 11141. **Risk assessment**
The department shall establish and apply a risk assessment instrument to each sex offender under its jurisdiction for the purpose of notification to law enforcement agencies and to the public.

§ 11142. **Mandatory notification of conditional release or discharge of sex offenders**
The department and the Department of Public Safety, State Bureau of Identification are governed by the following notice provisions when a sex offender is conditionally released or discharged.

1. **Duties of the department.** The department shall give the Department of Public Safety, State Bureau of Identification notice of the following:

A. The address where the sex offender will reside;

B. The address where the sex offender will work, if applicable;

C. The geographic area to which the sex offender's conditional release is limited, if any; and

D. The status of the sex offender when released as determined by the risk assessment instrument, the offender's risk assessment score, a copy of the risk assessment instrument and applicable contact standards for the offender.

2. **Duties of the Department of Public Safety, State Bureau of Identification.** Upon receipt of the information concerning the conditional release or discharge of a sex offender pursuant to subsection 1, the Department of Public Safety, State Bureau of Identification shall forward the information in subsection 1 to all law enforcement agencies that have jurisdiction in those areas where the sex offender may reside or work.

§ 11143. **Public Information.**

1. **Department.** Upon the conditional release or discharge of a sex offender from a state correctional institution, the department shall give notice of the information

F.3d at 1281–82 (rejecting plaintiffs' contentions that, *inter alia*, the punitive character of New York's sex-offender laws is indicated by its broad coverage of offenses, the wide extent of notification it authorizes, and the permission it grants to entities with vulnerable populations to disseminate information to the public with unfettered discretion (i.e., daycare centers)).

[¶ 22] Finally, sex offender registration and notification laws have been the subject of much litigation and have been overwhelmingly sustained as constitutional by the majority of courts,[12] including the

> under section 11142, subsection 1 to members of the public who the department determines appropriate to ensure public safety.
>     **2. Law enforcement agencies.** Upon receipt of the information concerning the conditional release or discharge of a sex offender pursuant to section 11142, subsection 2, a law enforcement agency shall notify members of that municipality who the law enforcement agency determines appropriate to ensure public safety.
> 34–A M.R.S.A. §§ 11141–11143 (Supp.2000).

12. Numerous courts have addressed constitutional challenges to sexual offender laws and have generally upheld them, though not always with the same reasoning or with the same synthesis of Supreme Court precedents. Some of those cases include the following: *Kansas v. Hendricks*, 521 U.S. 346, 370–71, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) (holding that Kansas's Sexually Violent Predator Act—which establishes procedures for the civil commitment of persons who, due to a "mental abnormality" or "personality disorder," are likely to engage in "predatory acts of sexual violence"—does not constitute punishment and, therefore, does not violate *Ex Post Facto* or Double Jeopardy Clauses); *Roe v. Office of Adult Probation*, 125 F.3d 47, 54–55 (2nd Cir.1997) (holding that Connecticut probation office policy that notifies community of sex offender parolees does not constitute punishment); *Pataki*, 120 F.3d at 1265–66 (2nd Circuit holding that neither the notification nor the registration requirements violate the *Ex Post Facto* Clause because the laws are not punitive in nature); *Artway*, 81 F.3d at 1267 (3rd Circuit holding that registration provisions of Megan's Law does not constitute punishment, and, therefore, does not offend the *Ex Post Facto*, Double Jeopardy, or Bill of Attainder Clauses); *E.B. v. Verniero*, 119 F.3d 1077, 1105 (3rd Cir.1997) (holding that the New Jersey's sex offender laws does not constitute punishment for purposes of the *Ex Post Facto* Clause), *cert. denied*, 522 U.S. 1109, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998); *Moore v. Avoyelles Corr. Ctr.*, 253 F.3d 870, 873 (5th Cir.2001) (holding the Louisiana sex offender neighborhood notification law does not violate the *Ex Post Facto* Clause because the law is not unconstitutionally punitive; the law, though it has certain punitive aspects, serves important nonpunitive goals); *Cutshall v. Sundquist*, 193 F.3d 466 (6th Cir.1999) (upheld Tennessee's sexual offender statute on Double Jeopardy, *Ex Post Facto*, Bill of Attainder, Due Process, Equal Protection, Eighth Amendment, right to interstate travel, and right to privacy challenges on the ground that it was not punitive), *cert. denied*, 529 U.S. 1053, 120 S.Ct. 1554, 146 L.Ed.2d 460 (2000); *Gregoire*, 124 F.3d at 1089, 1092 (9th Circuit upholding Washington's sexual offender statute from *ex post facto*, right-to-privacy, and due-process attack on the ground that it was regulatory and remedial, not punitive); *Femedeer v. Haun*, 227 F.3d 1244, 1253–54 (10th Cir.2000) (upheld Utah's sexual offender statute from Double Jeopardy and *Ex Post Facto* challenges on ground that it was not punitive); *Doe v. Weld*, 954 F.Supp. 425, 438 (D.Mass.1996) (denying a preliminary injunction because it was unlikely that the party seeking relief would succeed in showing that Massachusetts sex offender notification constitutes punishment); *People v. Malchow*, 193 Ill.2d 413, 250 Ill.Dec. 670, 739 N.E.2d 433, 440 (2000) (upholding Illinois's sex offender neighborhood notification law against *ex post facto* challenge because the law was determined not to have been punitive in nature); *Meinders v. Weber*, 604 N.W.2d 248, 255 (S.D. 2000) (upholding sex offender registration as remedial public safety measure, not *ex post facto* punishment); *People v. Pennington*, 240 Mich.App. 188, 610 N.W.2d 608 (2000) (holding that registration and disclosure requirements of the Sex Offenders Registration Act did not increase punishment, so as to violate the constitutional prohibition against *ex post facto* laws when applied to a defendant sentenced years before the Act became effective;

United States District Court for the District of Maine, *see Corbin v. Chitwood,* 145 F.Supp.2d 92, 99 (D.Me.2001). In *Corbin,* the court held that the Portland communi-

ty notification law did not violate the *Ex Post Facto* Clause because it did not constitute punishment.[13] *Id.* (citations omitted). The court also found that the defen-

the Act was directed at protecting the public, and had no punitive purpose); *People v. Afrika,* 168 Misc.2d 618, 648 N.Y.S.2d 235, 241 (N.Y.Sup.Ct.1996) (stating SORA is remedial in intent and operation; application did not violate *Ex Post Facto* Clause); *Doe v. Poritz,* 142 N.J. 1, 662 A.2d 367, 422 (1995) (holding purpose and implementation of registration and notification statutes were totally remedial and, thus, any deterrent punitive impact did not impose punishment for purpose of constitutional challenges and the *Ex Post Facto,* Double Jeopardy, Bill of Attainder, and Cruel and Unusual Punishment Clauses); *State v. Costello,* 138 N.H. 587, 643 A.2d 531, 533 (1994) (holding, "[a] statute that has both a penal and nonpenal effect is nonetheless nonpenal if that is the 'evident purpose of the legislature;'" the nonpenal, or regulatory, purpose of the Legislature in enacting the sex offender registration law is manifest; any punitive effect is *de minimis* ); *Kitze v. Commonwealth,* 23 Va.App. 213, 475 S.E.2d 830, 832 (1996) (holding that registration requirement was regulatory rather than penal; any potential punishment for failing to register was prospective and did not punish defendant for past criminal activity), *cert. denied,* 522 U.S. 817, 118 S.Ct. 66, 139 L.Ed.2d 28 (1997); *State v. Manning,* 532 N.W.2d 244, 248–49 (Minn.App.1995) (upheld Minnesota's sexual offender statute from *Ex Post Facto* challenge holding statute was regulatory and not punitive); *State v. Ward,* 123 Wash.2d 488, 869 P.2d 1062, 1069 (1994) (holding *Ex Post Facto* Clause not violated because applying the sex offender registration statute to prior convictions occurring before its enactment did not constitute punishment); *Young v. State,* 138 Md.App. 380, 771 A.2d 525, 532 (2001) (holding the Maryland statutory offender statute is not punitive for due process and Sixth Amendment purposes); *Rodriguez v. State,* 45 S.W.3d 685, 689 (Tex.App.2001) (stating that amendment to sex offender registration statute was not unconstitutional, as an *ex post facto* law, when applied to defendant, who was required under the amendment to register for life due to a conviction for aggravated sexual assault; registration requirement was remedial in nature, it did not impose punishment for constitutional purposes, and it was therefore not susceptible to an *Ex Post Facto*

claim). *But cf. State v. Calhoun,* 669 So.2d 1359, 1363 (La.App.1996) (stating, for the purposes of the *Ex Post Facto* Clause, "[r]egistration as a sex offender ... exposes the defendant to the possibility of additional penalties for his criminal conduct;" applying the registration provision to the defendant, therefore, constitutes a violation of the *Ex Post Facto* Clause of the Louisiana and United States Constitutions); *State v. Noble,* 171 Ariz. 171, 829 P.2d 1217, 1224 (1992) (acknowledging that registration requirement has both punitive and regulatory effects; though "decision is close," court, nonetheless, concluded that, on balance, the registration laws are nonpunitive); *Rowe v. Burton,* 884 F.Supp. 1372, 1380 (D.Alaska 1994) (granting, in part, preliminary injunction to plaintiffs because there was likelihood they would succeed on merits of claim that registration act will violate *Ex Post Facto* Clause); *Roe v. Farwell,* 999 F.Supp. 174, 199 (D.Mass.1998) (upheld Massachusetts's sexual offender statute from *Ex Post Facto,* Double Jeopardy, Bill of Attainder, Eighth Amendment, and Equal Protection challenges on ground that it was not punitive—except for one of its notification sections, which allowed any adult to request verification of whether a person is a sex offender); *Doe v. Otte,* 248 F.3d 832, 849 (9th Cir.2001) (held that, partly because registration portion of the Alaska Sex Offender Act was placed in criminal code, the Legislature intended that the Act be punitive in nature and *Ex Post Facto* Clause applied, prohibiting retroactive application of Act).

13. The notification program in *Corbin* was conducted pursuant to a Portland city ordinance, rather than pursuant to SORNA and its sister provisions. *Corbin v. Chitwood,* 145 F.Supp.2d 92 (D.Me.2001). This is, perhaps, due to the fact that, at the time the notification took place in that case, SORNA was not yet in effect, and the sex-offender registration and notification laws then in effect in Maine did not encompass the specific offenses for which Corbin was convicted in California, including "crimes against children/lewd or lascivious," "commitment (90 days) as a mentally disordered sex offender," "oral copulation," and "indecent exposure." *See id.* at 94.

dant had not "shown that the notification program is punitive (the record indicates that it was used in the interests of public safety), or that the punitive purpose or effect of the notification was so great as to negate the remedial intent of the policy." *Id.* (citations omitted). Similarly, Haskell has not met his burden of showing, nor has our analysis of the above factors revealed, that SORNA is punitive or that its punitive purpose or effect is so great as to negate the remedial intent of the registration and notification policies. The trial court, therefore, did not err in applying SORNA to Haskell.

C. Sentencing Court's failure to specify Haskell's status as either a sex offender or a "sexually violent predator" is a harmless error.

■■■ [¶ 23] Section 11222 of SORNA provides that "[t]he court shall determine

at the time of the conviction if a defendant is a sex offender or a sexually violent predator. A person who the court determines is a sex offender or a sexually violent predator shall register according to this subchapter." 34–A M.R.S.A. § 11222 (Supp.2000).

[¶ 24] The trial judge did not appear to make an express determination as to whether Haskell was a "sex offender" or a "sexually violent predator." *See* 34–A M.R.S.A. § 11203 (Supp.2000).[14] At the sentencing hearing, the judge merely placed an "X" in the box on a form, entitled "Judgment and Commitment," in the following manner:

[*X*] IT IS ORDERED THAT THE DEFENDANT, HAVING BEEN CONVICTED AS A SEX OFFENDER, SATISFY ALL REQUIRE

---

Although the U.S. District Court partly supported its finding that the *Ex Post Facto* Clause was not implicated in *Corbin* because the City of Portland had not conducted the notification program pursuant to a State statute or regulation, it also suggested that, even if the notification were conducted pursuant to a State statute or regulation, "there is no *ex post facto* violation because the notification does not punish [the defendant]." *Corbin v. Chitwood*, 145 F.Supp.2d 92, 99. Hence, the U.S. District Court sitting in Maine has joined the majority of those jurisdictions that have considered the matter in finding that laws like SORNA do not pose *ex post facto* problems.

14. Section 11203 provides, in pertinent part:
As used in this chapter, unless the context otherwise indicates, the following terms have the following meanings.
. . . .
5. **Sex offender.** "Sex offender" means a person who is an adult convicted or a juvenile convicted as an adult of a sex offense.
6. **Sex offense.** "Sex offense" means a conviction for one of the following offenses or for an attempt or solicitation of one of the following offenses if the victim was less than 18 years of age at the time of the criminal conduct:
. . . .

B. A violation under Title 17–A, section 253, subsection 2, paragraph E, F, G, H, I or J; Title 17–A, section 254; Title 17–A, section 255, subsection 1, paragraph A, E, F, G, I or J; Title 17–A, section 256; Title 17–A, section 258; Title 17–A, section 301, unless the actor is a parent of the victim; Title 17–A, section 302; Title 17–A, section 511, subsection 1, paragraph D; Title 17–A, section 556; Title 17–A, section 852, subsection 1, paragraph B; or Title 17–A, section 855; or
. . . .
7. **Sexually violent offense.** "Sexually violent offense" means:
A. A conviction for or an attempt to commit an offense under Title 17–A, section 253, subsection 1; Title 17–A, section 253, subsection 2, paragraph A, B, C or D; *or Title 17–A, section 255, subsection 1, paragraph* B, C, D or H; or
. . . .
8. **Sexually violent predator.** "Sexually violent predator" means a person is an adult convicted or a juvenile convicted as an adult of a:
A. Sexually violent offense; . . . .
34–A M.R.S.A. § 11203(5), (6)(B), 7(A) & 8(A) (Supp.2000) (emphasis added).

MENTS IN THE SEX OFFENDER REGISTRATION AND NOTIFICA- TION ACT. (34–A MRSA Ch. 15) YOU MUST SUBMIT TO THE TAKING OF YOUR FINGER- PRINTS AND A PHOTOGRAPH AS SPECIFIED IN THE NOTICE OF DUTY TO REGISTER.

This represents the only form, signed by the trial judge, that references Haskell's responsibilities and status for the purposes of SORNA. On the same date, however, two additional forms—signed by Haskell— were completed by an unidentified individ- ual—probably the Clerk of the Superior Court—clearly and unambiguously classi- fying Haskell as a "sexually violent preda- tor." These latter forms were not signed by the trial judge, but the record indicates Haskell received and signed copies of all three forms.

[¶ 25] Haskell contends that, by check- ing the box on Judgment and Commitment form, the trial judge made a specific deter- mination, for the purposes of 34–A M.R.S.A. § 11222, that Haskell is a "sex offender." Because the "sexually violent predator," rather than the "sex offender," label covers the offense with which he was charged, Haskell argues, without support- ing authority, that the court's noncompli- ance with the SORNA labelling require- ments constitutes an "incorrectible" error, which makes void the application of SOR- NA to him. Neither he, nor the State, discusses the implications of the other forms to this analysis.

[¶ 26] Looking at the three forms, how- ever, we cannot say that the trial judge, by merely checking a box in the Judgment and Commitment form, was making a de- termination as to Haskell's classification for the purposes of section 11222. That

form references 34–A M.R.S.A. ch. 15— SORNA—only generally; it does not iden- tify specific provisions. Consequently, by checking the box in question, the judge could only be said to be giving Haskell notice of his registration obligations under SORNA. There is no basis for Haskell's contentions that the court had affirmative- ly categorized him as a "sex offender," particularly since the accompanying forms—completed on the same date—per- form the specific task proscribed by sec- tion 11122.

[¶ 27] The court's failure itself to specifi- cally make that determination in this case is a harmless error. As noted above, the forms accompanying and completed on the same day as the Judgment and Commit- ment makes the appropriate section 11122 classification; thus, it cannot be said that notice to Haskell is an issue. Further, as Haskell himself recognizes, a person who is convicted of the crime of unlawful sexual contact pursuant to 17–A M.R.S.A. § 255(1)(C) can only be classified as a "sexually violent predator." 34–A M.R.S.A. § 11203(7)(A) & (8)(A) (Supp. 2000). There is no alternate category re- quiring a ruling that involves judicial dis- cretion. Accordingly, we find the court's failure to specifically classify Haskell as a sexually violent predator constitutes a harmless error.[15]

The entry is:

Judgment affirmed.

---

**15.** Nonetheless, the trial courts are reminded that the SORNA requires the court to make a determination, at the time of the conviction, if

a defendant is a sex offender or a sexually violent predator.