STATE OF MAINE                          SUPERIOR COURT
PENOBSCOT, ss.                          DOCKET NO. AP-2002-06

ARTHUR REARDON AND JILLAYNE, )
REARDON,                     )
                             )
          Petitioners        )     ORDER ON PETITIONER'S
                             )     80C APPEAL
v.                           )
                             )  DONALD L. GARBRECHT
THE MAINE DEPARTMENT OF      )    LAW LIBRARY
HUMAN SERVICES,              )
                             )   OCT 1 2002
          Respondent         )

FILED & ENTERED
SUPERIOR COURT
SEP 2 6 2002
PENOBSCOT COUNTY

Before the court are Petitioners', Arthur and Jillayne Reardon, appeals from the Maine Department of Human Services' decisions denying them a license to operate an Adult Family Care Home, and imposing a financial penalty upon them for providing residential care services without a license. For the following reasons both of the Maine Department of Human Services' decisions are affirmed.

## Background

On July 26, 2000, the Maine Department of Human Services ("DHS") investigated Arthur and Jillayne Reardon ("Petitioners") and learned they were providing assisted living services for more than two non-related individuals without a license in violation of Section 2020 of the Regulations Governing the Licensing and Functioning of Assisted Living Facilities and 22 M.R.S.A. §7801[1]. DHS notified Petitioners verbally on July 26, and in writing on July 27, that they must immediately reduce the number of non-related individuals in their home to two.

---

[1] 22 M.R.S.A. 7801 requires a license to provide residential treatment services to more than two non-related individuals.

1

On August 8, 2000, Petitioners applied for a license to operate a Level II Residential Care Facility. The Department visited the Petitioners' home on August 22 and learned the Petitioners were still providing assisted living services to seven non-related residents. DHS notified Petitioners that beginning October 1, 2000, DHS would impose a $500.00 a day penalty until Petitioners ceased operating without a license. The Petitioners came into compliance on September 24, 2000 and avoided the penalty. DHS did however impose a financial penalty of $3.00 a day per resident for failing to comply with DHS's order to immediately cease operating without a license. Petitioners have paid this penalty.

DHS denied Petitioners' application on October 3, 2000 due to their failure to comply with applicable laws and DHS regulations in spite of an order to do so. Petitioners applied for a license to operate an Adult Family Care Home on October 10, 2000, which DHS denied on October 27, 2000. DHS denied this application stating that Petitioners' prior actions showed a failure to demonstrate "honest and lawful" conduct pursuant to Section 4.A.6 of the Regulations Governing the Licensing of Adult Family Care Homes[2] (the "Regulations").

Hearing Officer Hugh Hooper ("Hooper") conducted two separate administrative hearings on January 8, 2001 with respect to the Level II license and the Adult Family Care Home license. On January 31 he issued a Recommended Decision concluding DHS correctly denied the Level II application. Hooper concluded the Petitioners clearly failed to comply with regulations despite DHS's orders. Petitioners denied financial gain played a role in their failure to reduce the number of residents. Hooper rejected

---

[2] Section 4.A.6 reads, "the provider shall have a satisfactory record of honest and lawful conduct in business and personal affairs."

2

Petitioners' claim that they needed sixty days to come into compliance. Hooper stated the "failure to immediately reduce the number of residents in their home, and their failure to do so until they were faced with a $500.00 a day penalty, does not add to the credibility of their assertion that financial gain was not a consideration in their actions," and concluded if they "were honestly trying to comply with the licensing process they would have immediately complied with Section 2020 of the regulations regardless of how difficult it would have been for them and then continued to try to meet the other licensing requirements."

Hooper also issued a Recommended Decision concluding DHS correctly denied Petitioners' application for an Adult Family Care Home license based on the Regulations. Hugh concluded, "In summary, the continued violation of Section 2.B[3] of the Regulations is sufficient ground to deny the Reardon's license application," and further DHS had "sufficient basis to conclude the Reardon's conduct in connection with their Residential Care Home matter did not constitute a satisfactory record of honest and lawful conduct. Therefore, the Department had sufficient basis to conclude that a violation of Section 4.A.6 of the regulations had occurred."

DHS Commissioner, Kevin Concannon, issued two separate Final Decisions on March 2, 2001. In both cases Commissioner Concannon accepted Hooper's findings of fact and his recommendations. DHS notified the Petitioners of their right to appeal but Petitioners chose not to. Instead, Petitioners again applied for a license to operate an Adult Family Care Home on April 9, 2001. On May 10, DHS denied Petitioners' application for failing to meet the criteria for an administrator pursuant to the Regulations

---

[3] Section 2.B reads, "No person shall operate a residential care facility for more than two (2) residents without a license."

3

as evidenced by their past conduct and the previous Final Decisions. Petitioners appealed this decision.

On June 26, 2001, DHS investigated concerned family member's complaint that the Petitioners were providing residential care for three residents at their Brewer home. One of the residents, V.M., primarily resided at the Petitioners' Chemo Pond facility but had been at the Brewer home since June 22, 2001. Initially Petitioners planned to take V.M. to visit her son in New York. However they cancelled this trip because their motor home needed repairs. Petitioners kept V.M. at the Brewer home so she could receive emergency medical treatment from a podiatrist on June 29, 2001. However, before DHS's visit the doctor cancelled this appointment but told the Petitioners he would try to see V.M. soon. The doctor would not, generally, go to the Chemo Pond facility to see V.M. and the Petitioners routinely brought her to the Brewer home for appointments. Petitioners understood patients could have day visits between homes and decided to keep V.M. at Brewer to await her medical treatment. V.M. spent her nights living in the Petitioners' motor home but spent her days inside the Brewer facility. DHS informed Petitioners they could not keep V.M in Brewer any longer and the Petitioners immediately returned her to the Chemo Pond facility. At some point after the DHS's visit the doctor rescheduled V.M.'s appointment for July 20, 2001 at the Chemo Pond facility. DHS confirmed Petitioners operated an unlicensed Adult Family Care Home when they provided residential services to three persons in their Brewer and imposed a $2,500.00 penalty pursuant to 22 M.R.S.A. §7944 (1)(C).

Hearing Officer Cynthia Reid ("Reid") conducted two separate administrative hearings on October 11, 2001 with respect to DHS's denial of the Petitioners' second

application for an Adult Family Care Home License and the financial penalty. Reid issued a Recommended Decision on November 20, 2001 recommending the Commissioner affirm DHS's decision to deny Petitioners' application. Reid found, "the history of the Petitioners' conduct in their business and personal affairs was addressed by the Recommended Decisions dated January 31, 2001 and the Final Decisions dated March 2, 2001" and nothing has happened since that time to mitigate those facts. Reid also issued a Recommended Decision that the Commissioner affirm the financial penalty.

The Commissioner issued two separate Final Decisions on January 16, 2002. He affirmed DHS's decision to deny the license and impose the financial penalty. Petitioners then filed the appeal presently before the Court.

### Arguments

Petitioners allege DHS denied them a license because the Hearing Officer and the Commissioner found the prior decisions, as a matter of law, barred Petitioners from receiving a license. Petitioners, therefore suggest the court should review the effect of the prior decision for errors of law. They point out that the DHS regulations clearly allow for reapplication, there is no rule that prevents DHS from granting a license in cases where there have been past violations, and DHS, as a policy matter, does not automatically reject reapplications.

Petitioners also argue that the Legislature did not provide adequate guidance to DHS concerning the promulgation of internal regulations and as such it was an unconstitutional delegation of legislative authority. Petitioners further contend Section

4.A.6. itself is ambiguous and does not provide an intelligible standard to guide conduct, violating concepts of due process.[4]

Concerning the financial penalty, the Petitioners argue DHS incorrectly applied the controlling regulations when they determined V.M. was a resident, and further the record does not support their decision. Petitioners contend 22 M.R.S.A. §7944(1)(C) is penal in nature and therefore the court should construe it strictly against DHS. State v. Lane, 495 A.2d 773, 776 (Me. 1985).

DHS contends they properly considered the prior decisions, along with the Regulations when reviewing the Petitioners' second application for a license. Further, there was enough evidence in the record to establish the fact Petitioners did not meet the "honest and lawful conduct" standard and therefore their decision was not arbitrary. Concerning the penalty, DHS contends it correctly interpreted their regulations when they assessed the penalty.

**Discussion**

**Adult Family Care Home**

**Error of Law**

Courts review an agency's decision for abuse of discretion, errors of law, or findings not supported by the evidence. Seider v. Board of Examiners of Psychologists, 2000 ME 206, ¶9, 762 A.2d 551. Petitioners claim DHS ruled that as a matter of law DHS's previous denial mandated the present denial. Petitioners allege this is an error of law and point out that 22 M.R.S.A. §7802 and the Regulations allow for reapplications.

---

[4] The Petitioners also argue they have a statutory entitlement to the Adult Family Care Home license pursuant to 22 M.R.S.A. §7802(1)(B). Therefore the government has created a property interest in the license. Munjoy Sporting & Athletic Club v. Dow, 2000 ME 141, ¶11, 755 A.2d 531, 537 (2000).

However, there is enough evidence in the record to suggest DHS only used the reasons for the previous denial, not the denial itself, in reaching its determination. DHS conducted a hearing, examined the record and found that due to the previous violations the Petitioners did not meet the "honest and lawful" requirement for administrators and nothing had happened since the previous denial to mitigate those circumstances. The record reveals that DHS reached two separate conclusions, although based on similar facts, in two separate cases. Petitioners have the burden to show DHS's decision was an error of law. Freyburg Health Care Center v. Department of Human Services, 1999 ME 122, ¶7, 734 A.2d 1141. Petitioners offer no evidence showing DHS denied their second application as a matter of law based on the first denial and have therefore failed to meet their burden. Those seeking to overturn an agency decision must show not only evidence to support their position, but also the lack of substantial credible evidence in the record to support the agency's decision. Green v. Commissioner of Department of Mental Health, Mental Retardation and Substance Abuse Services, 2001 ME 86, ¶12, 776 A.2d 612.

**Unconstitutional Delegation**

Petitioners also allege the legislature provided insufficient guidance when they granted DHS the authority to promulgate the "honest and lawful" regulation and it is therefore an improper delegation of legislative authority. In Re Springs Development Inc., 300 A.2d 736, 751 (Me. 1973). Petitioners bear the burden of showing the legislation is unconstitutional. Town of Baldwin v. Carter, 2002 ME 52, ¶10, 794 A.2d 62. In assessing the constitutionality of a legislative delegation of authority to an administrative agency, the court reviews the entire relevant legislative scheme. Ogunquit Sewer Dist. v. Town of Ogunquit, 1997 ME 33, ¶16, 691 A.2d 654. The courts look to

see if the legislation delegating authority contains sufficient standards to guide agency decision-making. <u>Northeast Occupational Exchange Inc. v. State</u>, 540 A.2d 1115, 1116 (Me. 1988). The Court in <u>Lewis v. State Department of Human Services</u>, 422 A.2d 743, 748 (Me. 1981) found the legislature accomplished this goal when they clearly revealed the purpose of the regulations, defined what the agency can regulate and suggested degrees of regulation. <u>Northeast Occupational Exchange Inc.</u>, 540 A.2d at 1116.

It is true that 22 M.R.S.A. § 7902-A[5], the governing statutory scheme, does not specifically authorize the regulation in question. It does however authorize DHS to adopt major substantive rules for assisted living services, subject to 5 M.R.S.A. 375 (II-A). 22 M.R.S.A. § 7902-A. It describes the subject matter of the regulations (which include administration) orders DHS to consult various sources, and includes certain areas DHS must regulate. 22 M.R.S.A. §7902-A (1-6). Further, DHS must promulgate these regulations subject to the Maine Administrative Procedures Act, 5 M.R.S.A. 375 (II-A) and its rule making procedures which provide additional safeguards. Viewing the legislation with the appropriate deference and the Petitioners' burden in mind, the delegation of legislative authority is clearly permissible.

**Unconstitutionally Vague**

The "honest and lawful" regulation itself may be unconstitutionally vague. Concepts of due process flowing from both the Fourteenth Amendment of the United States Constitution and <u>Article I, 6-A</u> of the Maine Constitution require laws provide notice of what conduct the state will sanction. <u>Town of Baldwin</u>, 2002 ME 52, ¶10. The Court construes statutes in order to preserve their constitutionality and the Petitioners

---

[5] Repealed effective October 1, 2002. However, the new version contains the same language as far as this matter is concerned.

bear the burden of proving there is no logical, constitutional construction. Id. at ¶9. Although the courts apply the "void for vagueness" doctrine most often in criminal cases, they have applied the doctrine to the civil regulation of conduct. Courts apply the doctrine in two situations: first, when statutes purport to regulate a person's conduct and provide a penalty for non-compliance and; second, when the statutory prohibitions are clear, but guidelines for enforcement are not sufficiently clear so as to prevent arbitrary enforcement. In re Bailey M., 2002 ME 12, ¶12 788 A.2d 590, 598.

Petitioners allege the "honest and lawful" standard is vague and does not allow them to conform their conduct accordingly. Petitioners cite Maine Real Estate Commission v. Kelby, 360 A.2d 528, 531 (Me. 1976). The regulations in that case set forth certain conduct that could result in the loss of a Real Estate License. However, the Court ruled standards such as "bad faith" and "dishonest" were not unduly vague and went further to note, "[T]here are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with." Maine Real Estate Commission, 360 A.2d 528, 531. (quoting in an analogous context United States Civil Service Commission v. National Association of Letter Carriers, 413 U.S. 548, 578-79 (1973), 93 S.Ct. at 2897.) Neither the United States Constitution nor the Maine Constitution requires objective quantification, mathematical certainty, and absolute precision in legislative language. Town of Baldwin Carter, 2002 ME 52, ¶ 9. People of common intelligence need not guess how to conform their actions to the "honest and lawful" regulation. Id. at ¶10.

**Financial Penalty**

**Civil/Criminal**

Petitioners contend the court must construe 22 M.R.S.A. §7944(1)(C) strictly because it is penal in nature. The Supreme Court in Hudson v. United States, 522 U.S. 93, 118 S.Ct. 488 (1997) developed the "intent-effect" test to determine whether a penalty is criminal or civil. State v. Haskell, 2001 ME 154, ¶8, 784 A.2d 4. Initially determining whether a particular punishment is civil or criminal is a matter of statutory construction. Id. The legislature placed 22 M.R.S.A. §7944 (1)(C) in the civil code, and the legislature's intended purpose was "to ensure compliance with state licensing rules or to protect the residents of long-term care facilities or the general public." 22 M.R.S.A. §7944 (1)(C). The legislature intended to enact a civil not criminal penalty. However, the court must decide whether the statute's purpose or effect is so punitive that it transforms what the legislature intended as a civil remedy into a criminal penalty. State v. Haskell, 2001 ME 154, ¶8. The individual attempting to override legislative intent must show by the "clearest proof" that the remedy is so punitive that it warrants designation as a criminal penalty. Id.

Courts deem fines that are reasonable in nature as civil penalties because they have a remedial, not punitive, purpose. State v. Anton, 463 A.2d 703, 707 (Me. 1983). The fact that a penalty may secondarily deter behavior does not transform the penalty into a criminal matter. Department of Environmental Protection v. Emerson, 616 A.2d 1268, 1270 (Me. 1993). The Petitioners offer no clear proof that 22 M.R.S.A. §7944 (1)(C) is so punitive that it negates the Legislatures civil intent.

**Substantial Evidence**

The court will show great deference to DHS's interpretation of a statute or regulation it administers unless the statute compels a contrary result. Maritime Energy v. Fund Insurance Review Board, 2001 ME 45, ¶7, 767 A.2d 812 (citing, Centamore v. Department of Human Services, 664 A.2d 369, 370 (Me. 1995)). The courts sustain administrative decisions if they find the agency could have "fairly and reasonably found the facts as it did." Seider, 2000 ME 206, ¶9 (internal citations omitted). The party seeking to overturn the agency's decision has the burden of showing there is no competent evidence to support the decision. Id.

DHS determined the Petitioners provided residential care services for three individuals at their Brewer home from June 22, 2001 through June 26, 2001 without a license in violation of the Regulations and 22 M.R.S.A. §7801. The record reveals V.M. was at the Brewer facility during that period, the Petitioners did not have a license, there is no emergency medical care exception to the license requirement, the Doctor canceled V.M.'s appointment sometime before June 26, 2001, the Doctor eventually saw V.M. at the Chemo Pond facility located one-half hour away in July, and the Petitioners had a prior history of operating an unlicensed facility. The Petitioner alleges V.M. was not a resident of the Brewer facility as she slept in a motor home not in the Brewer house. However, the motor home is located 25 feet from the Brewer facility and in order to be considered a separate facility the motor home would have to be 1,500 feet from the Brewer home pursuant to Section 7(A)(6) of the Regulations. Petitioners fail to show there is no credible evidence in the record to support DHS's finding that V.M. was a resident from June 22, 2001 to June 26, 2001.

11

THE DOCKET ENTRY IS:

The Maine Department of Human Services' decision to deny Arthur and Jillayne Reardon's application for a license to operate an Adult Family Care Home is affirmed.

The Maine Department of Human Services' decision to impose a financial penalty on Arthur and Jillayne Reardon for providing residential services without a license is affirmed.

The clerk is ordered to incorporate this decision into the docket by reference.

_____
Justice, Superior Court

DATED:     September 26 , 2002.

12

Date Filed __3/7/02__ ___PENOBSCOT___ Docket No. __AP-2002-6__
                              County

Action __Review of agency action__

ASSIGNED TO JUSTICE ANDREW M. MEAD




ARTHUR REARDON and
JILLAYNE REARDON                    vs. THE MAINE DEPT. OF HUMAN SERVICES

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| FARRELL, ROSENBLATT & RUSSELL<br>61 MAIN STREET – P O BOX 738<br>BANGOR, ME 04402-0738<br>BY: Jon A. Haddow, Esq. | State of Maine Dept. of the Atty General<br>6 State House Station<br>Augusta ME 04333-0006<br>BY: Renee Guignard, AAG |

| Date of Entry | |
|---|---|
| 3/7/02 | Complaint M.R.CIV.P. 80C filed. |
| 3/7/02 | Case File Notice Postcard forwarded to Plaintiff's Counsel. |
| 3/11/02 | By letter, Entry of Appearance filed by Renee Guignard, AAG on behalf of the Department of Human Services. |
| 3/25/02 | Motion for Enlargement of Time in Which to File Certified Record filed by Defendant. |
| 3/27/02 | File presented to Justice Mead for review. |
| 3/29/02 | File returned by Justice Mead, ruling issued. |
| 3/29/02 | Court's ruling on Defendant's Motion for Enlargement of Time in Which to File Certified Record filed; Granted. (Mead, J.) (ruling signed 3/27/02) Copy forwarded to all attorneys of record. |
| 4/22/02 | Certification of Record filed. |
| 4/22/02 | Notice and Briefing Schedule 80C Appeal of Final Agency Actions filed. Copy forwarded to all attorneys of record. |
| 4/26/02 | Motion to Extend Deadline for filing Appellant's Brief filed. |
| 4/30/02 | The court's ruling on Motion to Extend Deadline for Filing Appellants' Brief filed 4/26/02, Motion granted. (Mead, J) Copy forwarded to all attorneys of record. |
| 5/3/02 | Corrected Notice and Briefing Schedule 80C Appeal of Final Agency Actions filed. Copy forwarded to all attorneys of record. |