2002 ME 12

### In re BAILEY M.

Supreme Judicial Court of Maine.

Submitted on briefs: Oct. 2, 2001.
Decided: Jan. 28, 2002.

C. Clifton Fuller III, the Attorneys Office, P.A., Belfast, for appellant.

G. Steve Rowe, Attorney General, Paul Stern, Deputy Attorney General, Christoher Leighton, Assistant Attorney General, Nancy Henry, Assistant Attorney General, Augusta, for appellees.

Maureen Dea, Brunswick, for appellee, Andrew B.

Barbara Raimondi, Auburn, for appellee, Richard C.

J. Lawrence Irwin, Lewiston, guardian ad litem.

Panel: SAUFLEY, C.J., CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] The mother of Bailey M. brings this interlocutory appeal from the order entered in the District Court (Lewiston, *Mullen, J.*), denying her motion to open to the public the proceedings in the District Court resulting from the petition of the Department of Human Services to terminate the mother's parental rights. The mother contends that the public has a First Amendment right to access these proceedings. She also contends that 22 M.R.S.A. § 4007(1) creates a presumption that child protection proceedings will be open and places the burden on the party seeking closure to show that they should be closed. Finally, she argues that even if the statute does presume closure, it is unconstitutionally vague because it does not sufficiently delineate when the court should open proceedings. We address the mother's appeal as an exception to the final judgment rule, but we are unpersuaded by her arguments as to the merits of her appeal, and we affirm the order of the District Court.

[¶ 2] The mother had two daughters: Logan and Bailey. In March of 2000, the two girls were removed from the mother's home after the court entered an ex parte Preliminary Protection Order. The Department sought the order because it had evidence that the mother had placed her children in dangerous situations or failed to protect them from danger.[1]

[¶ 3] The Department placed Logan and Bailey in a foster home pending the final outcome of the case. In January 2001, Logan died while in the foster home. The Department removed Bailey from that foster home and the State subsequently brought criminal charges against the foster mother in connection with Logan's death. These events received substantial media coverage, and generated media and public interest in the Department's child protection policies and procedures. Although the Department was the primary focus of the media coverage, the mother asserts that some of the media attention

---

1. We emphasize that the issue on appeal is whether the proceedings should be opened to the public, not whether the mother's parental rights should be terminated. While the Department's allegations are relevant to the balancing of interests required to decide this issue, and we accordingly discuss them to some extent, the District Court has not made a determination as to the merits of those allegations.

focused on her, and that much of the reporting pertaining to her was inaccurate. She alleges that there were reports that she abused her children. Further, she alleges that the Commissioner of the Department publicly stated that she was ultimately responsible for Logan's death because Logan would never have gone to a foster home had she been a better parent. The mother claims that, as a result of all this publicity, her previously solid reputation in the community has been seriously harmed.

[¶ 4] The mother contends that the best way for her reputation to be repaired would be for the proceedings to determine Bailey's fate to be opened to the public. Bailey's guardian ad litem opposed the mother's motion to open the proceedings, arguing that an open hearing would violate Bailey's statutory right to privacy and have a substantial negative impact on her life. Although the Department did not then take a position on the motion, it did disagree with the mother's contention that closing the hearing would violate her First Amendment rights.

[¶ 5] In denying the mother's motion, the court concluded that any First Amendment claim that the mother had to an open proceeding was outweighed by the child's right to a private hearing and the State's interest in keeping child protection proceedings out of the public view. Specifically, the court concluded that the Legislature had expressed its intent to keep child protection proceedings closed, that doing so was justified by a compelling state interest,[2] and that the state's general rea-

sons for keeping proceedings closed are present with specificity in this case. The mother filed a motion for reconsideration. In response to the motion the District Court modified a few parts of its decision but left it substantially unchanged. The mother then filed this appeal.

## I.

■ [¶ 6] We first address whether this interlocutory appeal is properly before us. Usually appeals have to wait until a final decision has been rendered. *Andrews v. Department of Envtl. Protection*, 1998 ME 198, ¶ 4, 716 A.2d 212, 215. This so-called "final judgment rule" serves several important purposes:

It helps curtail interruption, delay, duplication and harassment; it minimizes interference with the trial process; it serves the goal of judicial economy; and it saves the appellate court from deciding issues which may ultimately be mooted, thus not only leaving a crisper, more comprehensible record for review in the end but also in many cases avoiding an appeal altogether.

*State v. Maine State Employees Ass'n*, 482 A.2d 461, 464 (Me.1984).

■ [¶ 7] We have recognized several exceptions to the final judgment rule, however, among them the "death knell" exception, which the mother contends applies here.[3] That exception allows a party to appeal an interlocutory order immediately if "substantial rights of [that] party will be irreparably lost if review is delayed until final judgment." *Andrews*, ¶ 4, 716 A.2d

---

2. Among the reasons advanced to justify closing child protection proceedings is the protection of the privacy of participants in the proceedings, which is important not only for its own sake, but because it allows parties to work to resolve difficult emotional situations without also having to deal with the glare of extensive media coverage. Protecting the pri-

vacy of the parties also allows the participants to get on with their lives once the case has ended.

3. We do not address the mother's contention that the "collateral order" exception to the final judgment rule is also applicable.

at 215 (quoting *Cook v. Cook*, 574 A.2d 1353, 1354 (Me.1990)). The death knell exception permits us to immediately review an interlocutory order "when failure to do so would preclude any effective review or would result in irreparable injury." *Maine State Employees Ass'n*, 482 A.2d at 464 (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 441, 76 S.Ct. 895, 100 L.Ed. 1297 (1956) (Frankfurter, J., concurring in part)). The exception is only available when the injury to the plaintiff's claimed right would otherwise be "imminent, concrete, and irreparable." *See Morse Bros., Inc. v. Webster*, 2001 ME 70, ¶ 14, 772 A.2d 842, 847.

■■ [¶ 8] A right will be "irreparably lost" for purposes of the death knell exception if we could not effectively provide a remedy to the appellant if we ultimately decided to vacate the interlocutory determination after a final judgment. *See Andrews*, ¶ 4, 716 A.2d at 215 (interlocutory review of denial of qualified immunity at summary judgment stage proper because reversal after judgment would not vindicate defendant's right to avoid having to defend suit). Although the fact that a delay will involve *some* harm to the appellant is not sufficient to constitute an "irreparable loss" if the harm is temporary and will only last for the duration of the litigation, *see In re Erica B.*, 520 A.2d 342, 345 (Me.1987), we agree with the mother that the right she asserts in this case would be irreparably lost if the District Court's decision to keep the proceedings closed was not reviewed until a final judg-

ment had been rendered and her contentions were then decided to be meritorious. If we were to conclude *after* the proceedings were completed that the mother had a constitutional right to have the hearings opened, little could be done to correct the deprivation of that right.[4] We have not previously addressed the constitutional issue raised by this appeal and the mother has demonstrated sufficient risk of irreparable loss to meet her burden. Accordingly, we will review the District Court's order.

## II.

■ [¶ 9] Although neither party raised the question of whether the mother has standing to assert the rights that she claims the statute violates, standing of a party can be raised *sua sponte*. *Nemon v. Summit Floors, Inc.*, 520 A.2d 1310, 1312 (Me.1987). Because of the nature of the mother's First Amendment claims, she lacks standing to bring them.[5]

■ [¶ 10] Generally, a litigant cannot assert the constitutional rights of a third party. *See State v. York*, 1997 ME 209, ¶ 6, 704 A.2d 324, 325–26 (witness subpoenaed by government could not challenge validity of subpoena by arguing that defendant in original trial lacked comparable subpoena powers); *Brann v. State*, 424 A.2d 699, 702 (Me.1981) ("One who attacks the constitutionality of a legislative act must be actually deprived of a constitutional right by that legislation.").[6] We sum-

---

4. The Department suggests that if we were to conclude after a final judgment that the mother has a right to an open hearing we could still rectify the harm by ordering that the transcripts of the proceedings be opened to the public. We are not persuaded, however, that releasing the transcripts months after the hearing had ended would be a satisfactory replacement to any right the mother has to

have the hearings open to the public at the time they are taking place.

5. The mother does have standing to make her statutory construction and void-for-vagueness arguments.

6. A party can assert the constitutional rights of third parties in only three situations: (1) the constitutional claims would otherwise be

marized the reasons for this prohibition in *Common Cause v. State:*

> That longstanding rule is based on three considerations: first, if the holders of those rights either did not wish to assert them or could enjoy them regardless of the success of the in-court litigant, the court would adjudicate the rights unnecessarily. Also, the "thrust" or timing of the action in which the rights of the third party are raised, or the choice of forum, may conflict seriously with the third party's underlying interest. Finally, third parties are usually the best proponents of their own rights.

*Common Cause*, 455 A.2d at 6–7 (citations omitted).

[¶ 11] The mother wants these proceedings opened because she believes that she has been the victim of publicity that unfairly depicted her in a bad light and that opening the proceedings would salvage her reputation. Although her interest in having the proceedings opened is based on preserving *her* reputation, her First Amendment challenge to the refusal of the court to open the proceedings is grounded on several Supreme Court decisions holding that members of the *public* have a First Amendment right to access certain criminal proceedings.[7] The mother does not cite, and we were not able to find, a case where the Supreme Court held that a *party* to a child protection proceeding has a First Amendment right to open hearings.[8] Because the First Amendment right the mother is asserting is that of the public, and not her own, she does not have standing to raise it in this appeal, and we do not consider it further.

### III.

[¶ 12] Although in this appeal the mother placed great relevance on her First Amendment claims, she also contends that: (1) the District Court failed to comply with 22 M.R.S.A. § 4007(1) when it refused to open the proceedings, and (2) section

---

denied a judicial forum, (2) the rights of the third parties would be impaired if they were forced to assert the rights themselves, or (3) the litigant is in a special relationship with the party whose rights are being asserted. *See Common Cause v. State*, 455 A.2d 1, 7 (Me.1983) (summarizing and following United States Supreme Court precedent). None of those reasons apply here.

**7.** For example, the first case she cites is *Oklahoma Publishing Company v. District Court*, 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 (1977). In that case, the Supreme Court held that a court could not issue an injunction prohibiting the media from publishing information about a juvenile defendant that was "publicly revealed in connection with the prosecution of the crime." *Id.* at 311, 97 S.Ct. 1045 (quoting *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 471, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975)). She also cites *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), where the Court held that public access to criminal trials was a deeply rooted tradition in Anglo-American jurisprudence and was consequently a right incidental to the First Amendment right of freedom of the press. In *Richmond Newspapers*, the defendant was on trial for the fourth time for murder. *Id.* at 559, 100 S.Ct. 2814. The three previous trials had ended in mistrials, in part because of the publicity that the trials had received. *Id.* Frustrated with the publicity, the defendant moved to close the proceedings and the prosecution did not object. *Id.* at 559–60, 100 S.Ct. 2814. The trial court, presumably also frustrated with the publicity surrounding the trial, had eagerly granted the motion without first making any formal findings of fact. *Id.* at 560, 100 S.Ct. 2814. Nevertheless, the Court held that the court's concerns about avoiding publicity that would cause another mistrial did not outweigh the public's First Amendment right to access the proceedings. *Id.* at 575, 100 S.Ct. 2814.

**8.** The few cases she cites where the Court held that a party has a right to an open hearing were criminal cases applying the Sixth Amendment. They are inapposite here.

4007(1) should not be relied on to close proceedings because it is unconstitutionally vague.

[¶ 13] The mother first argues that the trial court failed to comply with the statutory requirements for closure contained in 22 M.R.S.A. § 4007(1). That provision provides, in pertinent part:

All child protection proceedings shall be conducted according to the rules of civil procedure and the rules of evidence, except as provided otherwise in this chapter. All the proceedings shall be recorded. *All proceedings and records shall be closed to the public, unless the court orders otherwise.*

22 M.R.S.A. § 4007(1) (emphasis added).

■ [¶ 14] The District Court concluded that this provision creates a presumption that child protection proceedings will be closed, and allows a court to open them only if the proponent of opening the proceedings can show that "such opening of the matter will not defeat the State's compelling interest in protecting children from the possible detrimental effects of revealing to the public allegations and evidence relating to parental neglect and abuse." The mother argues that section 4007(1) creates a presumption that proceedings will be *open* unless the court makes specific findings of unusual circumstances that would justify closure. She further argues that if the statute is not interpreted in this way, it is unconstitutionally vague. We disagree.

[¶ 15] The plain language of the statute is inconsistent with the mother's interpretation. The statute clearly states that the presumption is that proceedings will be closed absent extraordinary circumstances. As the sentence is written, "all" connotes the general rule, and "unless" indicates that what follows is an exception to the rule. Accordingly, the only logical interpretation of section 4007(1) is that proceedings should be closed absent extraordinary circumstances.

[¶ 16] That clear language in section 4007(1) is consistent with other provisions in the statute providing for disclosure of confidential materials in child protection proceedings. 22 M.R.S.A. §§ 4007–4009 (1992 & Supp.2000). For example, 22 M.R.S.A. § 4008(3) (1992 & Supp.2000) authorizes a court to disclose confidential information contained in records or reports if "the court determines that public disclosure of the information is necessary for the resolution of an issue pending before the court." The fact that other provisions state particular situations when records *may* be disclosed, as opposed to listing the situations where records should *not* be disseminated to the public, is a strong indication that the Legislature intended section 4007(1) to mean that child protection proceedings are presumptively closed.

[¶ 17] Moreover, this interpretation of section 4007(1) is consistent with federal law. Title 42 U.S.C. § 5106a(b)(4) conditions the grant of federal funds for child protection programs on the state having "methods to preserve the confidentiality of all records in order to protect the rights of the child and of the child's parents or guardians, including methods to ensure that disclosure (and redisclosure) of information concerning child abuse or neglect involving specific individuals is made only to persons or entities that the State determines have a need for such information directly related to purposes of [child protection]." In view of the plain language of section 4007(1), and of federal policy, it is difficult to conclude that the Legislature intended section 4007(1) to create a presumption that all proceedings will be open.

[¶ 18] Even though the presumption is that hearings will be closed, 22 M.R.S.A.

§ 4007(1) does contemplate that hearings *may sometimes* be opened. Aside from a few enumerated situations delineated in other provisions, the statute is silent on what factors the court should consider when deciding whether to open the hearing to the public. Nevertheless, there is some guidance provided by federal law. The regulations enacted pursuant to the Child Abuse Prevention Act, 42 U.S.C. § 5101–5119c, delineate the specific situations in which states may authorize disclosure of records related to child protection cases.[9] At the very least, the exhaustive list of rules contained in those regulations demonstrate a strong preference that a court should not arbitrarily release confidential information. The mother has not articulated an exception of a type contemplated by Maine's statutes or federal regulations to justify opening the proceedings.

[¶ 19] The mother also contends that if the statute creates a presumption of closure then it is unconstitutionally vague because it gives the court unfettered discretion to decide whether to open a hearing. The mother's contention is unpersuasive. The so-called "void-for-vagueness" doctrine has been applied to strike down statutes in only two situations: first, when

9. The regulations establishing eligibility requirements are contained at 45 C.F.R. § 1340.14, and provide, in pertinent part:
  (i) Confidentiality.
  (1) The State must provide by statute that all records concerning reports and reports of child abuse and neglect are confidential and that their unauthorized disclosure is a criminal offense.
  (2) If a State chooses to, it may authorize by statute disclosure to any or all of the following persons and agencies, under limitations and procedures the State determines:
    (i) The agency (agencies) or organizations (including its designated multidisciplinary case consultation team) legally mandated by any Federal or State law to receive and investigate reports of known and suspected child abuse and neglect;
    (ii) A court, under terms identified in State statute;
    (iii) A grand jury;
    (iv) A properly constituted authority (including its designated multidisciplinary case consultation team) investigating a report of known or suspected child abuse or neglect or providing services to a child or family which is the subject of a report;
    (v) A physician who has before him or her a child whom the physician reasonably suspects may be abused or neglected;
    (vi) A person legally authorized to place a child in protective custody when the person has before him or her a child whom he or she reasonably suspects may be abused or neglected and the person requires the information in the report or record in order to determine whether to place the child in protective custody;
    (vii) An agency authorized by a properly constituted authority to diagnose, care for, treat, or supervise a child who is the subject of a report or record of child abuse or neglect;
    (viii) A person about whom a report has been made, with protection for the identity of any person reporting known or suspected child abuse or neglect and any other person where the person of agency making the information available finds that disclosure of the information would be likely to endanger the life or safety of such person;
    (ix) A child named in the report or record alleged to have been abused or neglected or (as his/her representative) his/her guardian or guardian ad litem;
    (x) An appropriate State or local official responsible for administration of the child protective service or for oversight of the enabling or appropriating legislation, carrying out his or her official functions; and
    (xi) A person, agency, or organization engaged in a bona fide research or evaluation project, but without information identifying individuals named in a report or record, unless having that information open for review is essential to the research or evaluation, the appropriate State official gives prior written approval, and the child, through his/her representative as cited in paragraph (i) of this section gives permission to release this information.

statutes purported to regulate a person's conduct and provided a penalty for non-compliance, *see Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (loitering statute); *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) (disorderly conduct statute); *Maine Real Estate Comm'n v. Kelby,* 360 A.2d 528, 531 (Me. 1976) (code of professional conduct providing for suspension of license), and, second, when the statutory prohibitions were clear, but guidelines for enforcement were not sufficiently clear to prevent arbitrary enforcement. *See City of Chicago v. Morales,* 527 U.S. 41 at 62, 119 S.Ct. 1849, 144 L.Ed.2d 67; *Shuttlesworth v. Birmingham,* 394 U.S. 147, 153–54, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); *Cox v. Louisiana,* 379 U.S. 536, 557–58, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). This is not such a statute.

[¶ 20] The mother is not being penalized by the District Court for any conduct, so the principle of "fair notice" that undergirds the void-for-vagueness doctrine is not implicated. We found no cases in which a court struck down a statute for being unconstitutionally vague when that statute merely granted broad discretion to a court to do something other than restrain the liberty of a person.[10] Accordingly, the "void-for-vagueness" doctrine is inapplicable because the statute merely confers discretion on the court running the proceedings about how those proceedings should be run.

The entry is:

Judgment affirmed

---

**10.** The mother contends that her liberty is being infringed because her First Amendment rights are being violated. The closure of the proceedings does not affect her First Amendment rights, there is no "gag order" that would affect her right to talk about this case.