STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-03-034
GAR-YOR - 2/23/2004

CROSSPOINT VENTURES, INC.,

Plaintiff

v.

TOWN OF KITTERY,

Defendant

ORDER

DONALD L. GARBRECHT
LAW LIBRARY

MAR 24 2004

Before this court is Plaintiff, Crosspoint Ventures, Inc.'s Rule 80B appeal from Defendant, Town of Kittery's decision dated June 11, 2003. In addition, before this court is Defendant, Town of Kittery's Motion to Strike Portions of Plaintiff's Reply Memorandum. For reasons stated below, the appeal is Denied.

## PROCEDURAL HISTORY

Plaintiff, Crosspoint Ventures, Inc. ("Cross") owns and operates an adult entertainment business that offers food, alcoholic beverages and exotic dancing for its patrons. Plaintiff Cross is located on the Route One Bypass in Defendant, Town of Kittery, Maine ("Kittery"). Several years ago, Plaintiff Cross received approval for a special amusement permit for music, dancing or entertainment. On June 20, 2003, this permit was up for renewal. Accordingly, on May 12, 2003, a public hearing was held before the Kittery Town Council on the application of Plaintiff Cross for renewal of its permit. Based in part on the testimony of Mr. Roy, a neighbor, and other evidence, the Town Council ("Council") refused to renew the application of Plaintiff Cross.

On June 4, 2003, Plaintiff Cross appealed the decision of the Town Council to the Kittery Zoning Board of Appeals ("ZBA"). At this hearing Mr. Roy and Mr. Gowell

testified that the music from Plaintiff Cross' establishment was very loud and detrimental to their health. Also, Police Chief Strong testified that his police officers were continuously responding to noise complaints regarding Plaintiff Cross' business establishment. Based on this evidence, the ZBA concluded that Plaintiff Cross failed to establish that it's playing of "music would not constitute a detriment to the public health, safety or welfare." (R. at Exh. 8 at p. 28.) Consequently, the ZBA did not renew Plaintiff Cross' permit.

Therefore, Plaintiff Cross appealed the decision of the ZBA to the York County Superior Court, pursuant to M. R. Civ. P. 80B.

## DISCUSSION

### A. Plaintiff's Rule 80B Appeal

In Rule 80B appeals, the court must decide whether there was an abuse of discretion, erroneous interpretation of the law or findings not supported by substantial evidence in the record. Senders v. Town of Columbia Falls, 647 A.2d 93, 94 (Me. 1994); Grant's Farm Assoc. Inc. v. Town of Kittery, 554 A.2d 799, 801 (Me. 1989). The board's decision will be affirmed unless it is unlawful, arbitrary, capricious, or unreasonable. Senders v. Town of Columbia Falls, 647 A.2d at 94. The board's findings will not be disturbed if supported by substantial evidence contained in the record. Palesky v. Town of Topsham, 614 A.2d 1307, 1309 (Me. 1992). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." Id. With regard to factual determinations made by the board, a plaintiff seeking to overturn the decision of a board of appeals has the burden of showing that the evidence compels a contrary conclusion. Boivin v. Town of Sanford, 588 A.2d 1197, 1199 (Me. 1991). "If there is relevant evidence in the record to reasonably support the Board's conclusion, the fact that the record contains inconsistent evidence or

2

inconsistent conclusions could be drawn from the evidence does not invalidate the Board's holding." Id.

## 1. *De Novo* or Appellate Review?

In this case, the ZBA chose to review the decision of the Council in both an appellate and in a *de novo* capacity. The Law Court has held that "[u]nless the ordinance or statute specifically calls for the Board to act as both factfinder and appellate review tribunal, the Board will act in only one capacity, either as a tribunal of original jurisdiction, holding a hearing de novo, or as an appellate tribunal, reaching its decision on the basis of the record below." See Stewart v. Town of Sedgwick, et al., 2000 ME 157, ¶¶ 10, 757 A.2d 773, 776. Here, the applicable statute and ordinance do not specify in which capacity the ZBA should review the Council's decision. By acting in both capacities the Council afforded Cross the fullest measure of "due process". Accordingly, based on the procedure used by the ZBA, this court will directly review both the record before and the operative decisions of the Council and the ZBA.

## 2. Should the Witnesses Testimony Be Sworn?

Plaintiff Cross argues that there exists a requirement that testimony before the Council and the ZBA be given under oath. The Law Court has held that it is not "necessary to import into that quasi-legislative process all those safeguards of a court proceeding in order to meet the requirements of due process." Fichter v. Board of Environmental Protection, 604 A.2d 433, 437 (Me. 1992).[1] In addition, although not binding on this court, this court finds the decisions of sister states on this issue to be instructive and, in this case, persuasive.

---

[1] See also 8A Eugene McQuillin, Municipal Corporations, § 25.266.50 (3d ed. 2003) (citing that "[z]oning ordinances *may* provide for compelling the attendance of witnesses and the administration of oaths at hearings before zoning boards.") (emphasis added.)

A hearing before a Board of Adjustment should be conducted in an orderly manner but need not strictly conform to the rules of procedure and evidence necessary in a judicial proceeding. While this particular question does not appear to have been raised previously in Colorado, it is generally recognized that proceedings in zoning matters are informal, the strict rules of evidence need not apply, and the basic requirement is that the principles of fundamental fairness be observed. Other jurisdictions have held that in the absence of a statutory requirement that witnesses be sworn, it is not error for an administrative body to hear testimony from unsworn witnesses.

Monte Vista Professional Bldg., Inc. v. City of Monte Vista, 35 Colo. App. 235, 531 P.2d 400, 401-02 (Colo. 1975).

Here, the record indicates that all parties were given an opportunity to be heard. The Council and ZBA are not required under the Kittery Zoning Ordinance or applicable statutes to place witnesses under oath at their hearings. See 28-A M.R.S.A. § 1054; see also Jackson v. Town of Kennebunk, 530 A.2d 717, 717-18 (Me. 1987) (citation and quotations omitted) (holding that "[i]n the absence of a controlling agency rule or a contrary requirement of statutory and constitutional law, the procedure adopted by an administrative agency in any particular case should receive the deferential respect of a reviewing court.") Accordingly, based on the informal nature of zoning board hearings and the findings above, this court concludes that sworn testimony is not required in this case.

### 3. Was Defendant's Decision Arbitrary and Capricious?

Plaintiff Cross asserts that Defendant Kittery's denial of its special activity/amusement permit was arbitrary and capricious. Specifically, Plaintiff Cross argues that Defendant Kittery incorrectly found that this matter involved a public concern, applied an erroneous burden of proof, and acted in violation of the requirements of due process. Defendant Kittery, however argues that there was sufficient evidence presented to both the Council and the ZBA to support their

4

respective decisions denying Plaintiff Cross' application for a special activity/amusement permit.

### a. Council Hearing

First, at the Council hearing Police Chief Strong testified, "since day one, the Police Department started receiving complaints from Mr. Roy, who lives at the Nor'Easter Motel." (Council Minutes at 7.) "He said as Mr. Roy has stated, he has called about 100 times. Chief Strong said he can't document all those times, but the Department has responded and took reports on 37 different occasions to noise complaints." Id. Additionally, Police Chief Strong testified, "one other person at one time over the last three years has called about it." Id. This testimony was further corroborated by many written police reports indicating the specifics of the numerous noise complaints. (See R. at Tab 7.)[2]

Additionally, Mr. Roy testified, "he has not slept well since Joseph's opened. Mr. Roy [further testified that] he can't help thinking about how much business he is losing because of this. He said his marriage has been rocky because he irritable most of the time." (Council Minutes at 4.) Mr. Roy said "he has approached Mr. Wong and Mr. Wong has never expressed any interest in working with him on the volume." Id. Also, Mr. Roy testified he gets complaints from hotel guests. Id. at 9. "He said people check in for a week and leave after two days because they can't sleep." Id.

Based on this evidence, the Council determined that "the safety of the general public has been jeopardized." (Council Decision at 4.) Due to the complaints of Mr. Roy, and the independent corroboration of these complaints by police officers, this

---

[2] This court notes that several different police officers independently corroborated Mr. Roy's noise complaints. For example, "I could clearly hear music (both lyrics and sound) coming from Jo[]seph's. I then met with and spoke to Michael Roy. He allowed me into his residence and took me through his house. The bass was clearly audible while I was standing in the living room which is downstairs and also [in] both upstairs bedrooms." (See R. at Tab 7.)

court finds that there exists substantial evidence in the record to support the Council's decision. Therefore, the Council's decision was reasonable and should not be disturbed.

### b. ZBA Hearing

In addition to the evidence presented at the Town Council's hearing, the ZBA was presented with further police reports and further testimony from Plaintiff Cross' neighbor, Mr. Gowell. Mr. Gowell testified, "he lives 50 to 100 yards from Joseph's." (ZBA Minutes at 13.) "Mr. Gowell said it is 8:00p.m. and he and his wife can't go out on the front porch because the bass is pounding and people are screaming inside and outside in the parking lot." Id.

Furthermore, Police Chief Strong testified at this hearing that he had been to Plaintiff Cross' establishment on numerous occasions regarding noise complaints. Id. at 15. Police Chief Strong also testified, "the Department has documented over 37 times since Joseph's has been in operation" that it was necessary for them to respond to loud music. Id. at 16. "Chief Strong said on occasion, the noise has been to the point where he could hear it from the outside." Id. at 15.

Based on this evidence, the ZBA determined that the health of Mr. Roy, his hotel guests and Mr. Gowell were affected by the music being played at Plaintiff Cross' establishment. (R. at 28.) This court finds that this decision of the ZBA was not arbitrary and capricious. Instead, the ZBA's determination was appropriate, reasonable, and based on substantial evidence in the record.

Next, Plaintiff Cross argues that the decision of the ZBA was arbitrary and capricious because it applied an incorrect burden on the Plaintiff. Specifically, Plaintiff Cross asserts that the burden should have been on the ZBA to establish that the issuance of the permit would be detrimental to the public health, safety and welfare.

The ZBA's decision states "[t]he Board found that the applicant did not prove that the permitted activities at Joseph's would not cause a detriment to the public health, safety or welfare . . ." Title 28-A M.R.S.A. § 1054 provides, in relevant part that "[t]he municipal officers shall grant a permit unless they find that issuance of the permit would be detrimental to the public health, safety or welfare, or would violate municipal ordinances or rules and regulations." 28-A M.R.S.A. § 1054(5) (2003). This court finds that this statutory language does not place the burden on the Plaintiff or the municipal officers. Instead, this court finds that this language indicates that it is necessary for the Board to issue the permit unless it is persuaded that the license impairs the public health, safety or welfare.

Moreover, this court finds that the Council and ZBA decisions were not in violation of the requirements of due process. Instead, this court finds that the decisions provided for the public welfare, were based on appropriate statutory language, and were not arbitrary and capricious. See Danish Health Club v. Town of Kittery, 562 A.2d 663, 665 (Me. 1989) (citation omitted) (holding that the elements of due process require that the public welfare be provided for, the exercise of the police power not be arbitrary and capricious, and the legislative means employed to achieve the results sought be appropriate.)

Therefore, this court finds that Plaintiff Cross has failed to meet its burden in this court of establishing that the decisions of the ZBA were arbitrary and capricious.[3] See Herrick v. Town of Mechanic Falls, 673 A.2d 1348, 1349 (Me. 1996) (holding that "[o]ne seeking to overturn such a decision has the burden of establishing that the evidence

[3] In addition, this court notes that after significant testimony and debate between the Board members, the decision of the ZBA was 2 in favor of granting the permit request and 4 opposed. (R. at Tab F.) Accordingly, Plaintiff Cross' argument that the decision was a political decision based on the nature of the business and not on the merits, this court finds unpersuasive.

7

compels a contrary conclusion.")

### 3. Is 28-A M.R.S.A. § 1054(8) Void For Vagueness?

Plaintiff Cross argues that the terms "public health, safety or welfare" as provided in 28-A M.R.S.A. § 1054(8) are void for vagueness. More specifically, Plaintiff contends that a municipality can abuse its power and define these terms anyway it pleases. (See Plaintiff Rule 80B Brief at 8-9.)

First, this court notes that Plaintiff Cross failed to make this argument before the Council and the ZBA. Consequently, this court may decline to review this claim. Waltman v. Town of Yarmouth, 592 A.2d 1079, n.2 (Me. 1991) (holding that the court did not have to review the Plaintiffs constitutional claims, because they failed to make these assertions before the Board.) Despite this, however, this court finds that it is appropriate to address the arguments raise by Plaintiff Cross.

"A statute is presumed to be constitutional and the person challenging the constitutionality has the burden of establishing its infirmity. If at all possible, we will construe the statute to preserve its constitutionality." Town of Baldwin v. Carter, 2002 ME 52, ¶ 9, 794 A.2d 62, 66 (citations and quotations omitted). "Objective quantification, mathematical certainty, and absolute precision are not required by either the United States Constitution or Maine Constitution. Although it is preferable that a legislative body speak in precise and pellucid language, failure to meet that Olympian standard does not make its enactments void for vagueness. " Id. at n.2 (citations and quotations omitted).

In the case at bar, Plaintiff Cross contends that the terms "public health, safety or welfare" are void for vagueness, because they are not properly defined in the statute. These terms, however, are the equivalent of the municipality's police power, which does not possess an exact definition. "The police power is not susceptible of exact

8

definition; indeed, there should be no specific definition of it, and, in truth, the extent of the power has never been defined with precision." 6A Eugene McQuillin, Municipal Corporations, § 24.03 (3d ed. 1997). Furthermore, the Maryland Court of Appeals has held that:

> [t]o define it or to prescribe its extent would be to instantly reduce the doctrine to the unyielding and permanent rigidity of a statute or a constitutional mandate, and so to destroy its usefulness as a instrument for the interpretation of organic and statutory laws, so to protect the whole people from evils and dangers which follow the strict and literal application of such law to actual facts under existing conditions.

Mayor and Council of Pocomoke City v. Standard Oil Company et al., 162 Md. 368, 375, 159 A. 902. Accordingly, Plaintiff Cross has failed to meet its burden of establishing the statutes unconstitutionality. Therefore, this court finds that these statutory terms are "sufficiently clear to prevent arbitrary enforcement," and are not void for vagueness. See In Re Bailey M., 2002 ME 12, ¶ 19, 788 A.2d 590, 597-598.

## 4. Equitable Estoppel

Finally, Plaintiff Cross contends that Defendant Kittery is equitably estopped from refusing to issue the special activity/amusement permit in this case. The Law Court has held that:

> [p]roper application of the doctrine of equitable estoppel rests on the factual determination that the declaration or acts relied upon must have induced the party seeking to enforce the estoppel to do what resulted to his detriment, and what he would not otherwise have done. One who has induced another to believe what is untrue may not later assert the truth. Furthermore, the reliance upon which estoppel is claimed must have been reasonable.

City of Auburn v. Desgrosseilliers, 578 A.2d 712, 714 (Me. 1990) (quotations and citations omitted).

9

Here, Plaintiff Cross argues that two prior dismissed noise ordinance violations, brought by Defendant Kittery in the Maine District Court induced it to act. This court, however, disagrees. The noise complaints were dismissed because Defendant Kittery was using improper equipment, and not because Defendant Kittery retracted their initial complaints. Consequently, Plaintiff Cross should have been on notice that the noise emitted from its business was intrusive and needed to be further addressed.

Next, Plaintiff Cross cites that it was induced to continue operating its business in this manner, to its detriment. Based on the continuing complaints from neighbors and the repeated police requests to turn down the music, however, this court finds that Plaintiff Cross could not reasonably have been induced to act to its detriment.

## B. Defendant's Motion to Strike

Defendant Kittery asserts that this court should strike portions of Plaintiff Cross' Reply Memorandum. Specifically, Defendant Kittery requests that this court strike the portions of Plaintiff's Reply Memorandum that discuss or characterize the deposition testimony of Police Chief Strong. Conversely, Plaintiff Cross argues that the portions of its Reply Memorandum should not be stricken because the Defendant Kittery showed bias toward it by not renewing its permit. See Baker's Table, Inc. v. City of Portland, 2000 ME 7, ¶ 9, 743 A.2d 237, 240-241 (holding that Rule 80B(d) "is intended to allow the reviewing court to obtain facts *not in the record* that are necessary to the appeal before the court.") (citation omitted).

In the present case, this court notes that Police Chief Strong's Council, ZBA and deposition testimony were essentially consistent. Therefore, it is unnecessary to address the motion to strike.

10

WHEREFORE, this court **DENIES** Plaintiff Cross' appeal of Defendant Kittery's decision, pursuant to M. R. Civ. P. 80B.

Dated: February 23, 2004

G. Arthur Brennan
Justice, Superior Court

PLAINTIFF:
Ronald R. Coles, Esq.
COLES LAW OFFICE

DEFENDANT:
Duncan McEachern, Esq.
MCEACHERN AND THORNHILL