2008 ME 79

**ESTATE OF Bruce H. KINGSBURY.**

Supreme Judicial Court of Maine.

Argued: Feb. 14, 2008.
Decided: May 6, 2008.

Daniel L. Cummings, Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, ME, for the Estate of Bruce Kingsbury.

David B. McConnell, Esq., Stephanie Williams, Esq., Jennifer Pincus, Esq. (orally), Perkins Thompson, P.A., Portland, ME, for Terri MacMahan.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.*

Majority: CLIFFORD. LEVY, MEAD, and GORMAN, JJ.

Dissent: SAUFLEY, C.J., and ALEXANDER, and SILVER, JJ.

CLIFFORD, J.

[¶ 1] The estate of Bruce H. Kingsbury, through its personal representative, Robin L. Whorff, appeals from an order entered in the Sagadahoc County Probate Court (*Voorhees, J.*) (1) providing that Whorff, in her individual capacity, submit to genetic testing, and (2) if Whorff does not so submit, authorizing exhumation of Kingsbury's body for genetic testing, the order resulting from a petition filed by Terri L. MacMahan asserting that she is Kingsbury's biological child. The Estate contends that the court lacked authority to order exhumation for the purpose of genetic testing. Although MacMahan is correct that this is an appeal from a judgment that is not final and therefore is interlocutory, we accept the appeal pursuant to a recognized exception to the final judgment rule, and, addressing the merits of the appeal, we affirm the order.

## I. BACKGROUND

[¶ 2] Kingsbury, of Woolwich, died on March 18, 2006. Whorff, his daughter, filed an application in the Probate Court seeking informal probate of his will and appointment of herself as personal representative pursuant to 18–A M.R.S. § 3–301 (2007).[1] In April of 2006, the court did informally admit Kingsbury's will to probate, and appointed Whorff as personal representative. One month later, on May 4, 2006, MacMahan petitioned the court, pursuant to 18–A M.R.S. § 3–1001 (2007), for construction of Kingsbury's will and a determination of his heirs, asserting that she is Kingsbury's daughter by Gloria A. Kingsbury, Kingsbury's former wife, conceived while Gloria was in a prior marriage of her own. Having failed to reach an agreement with Whorff for genetic testing to determine if Whorff and MacMahan are half-sisters, MacMahan moved to compel Whorff as an individual to submit to DNA testing or, alternatively, for exhumation of Kingsbury's body for DNA testing.

---

\* Saufley, C.J., did not sit at oral argument but did participate in the development of the opinion.

1. In his will, executed in March of 1994, Kingsbury recited that he intentionally omitted Whorff from inheriting because he had otherwise provided for her during his life. He left his entire estate to Gloria A. Kingsbury, his wife at the time of the execution of the will, and appointed Gloria as personal representative. Kingsbury and Gloria were divorced in 2003, however, effectively revoking all bequests to her pursuant to 18–A M.R.S. § 2–802 (2007). Whorff is Kingsbury's child by a marriage prior to Kingsbury's marriage to Gloria.

[¶ 3]   The court issued an order requiring Whorff to submit to DNA testing within forty-five days, or, if she refused, authorizing exhumation of and DNA testing on Kingsbury's body.   The Estate filed this appeal.

## II.   DISCUSSION

### A.   Interlocutory Appeal

[¶ 4]   As a threshold matter, MacMahan contends that the estate's appeal should be dismissed as interlocutory. "It is well settled that appeals, in order to be cognizable, must be from a final judgment." *Bruesewitz v. Grant,* 2007 ME 13, ¶ 5, 912 A.2d 1255, 1257 (quotation marks omitted).   A final judgment is one that "fully decides and disposes of the entire matter pending before the court or administrative agency, leaving no questions for the future consideration and judgment of the court or administrative agency." *MacPherson v. Estate of MacPherson,* 2007 ME 52, ¶ 5, 919 A.2d 1174, 1175 (quotation marks omitted).   Any other interim order is deemed interlocutory and is not subject to appellate review until such a final judgment issues. *Bruesewitz,* 2007 ME 13, ¶ 5, 912 A.2d at 1257.   Nevertheless, there are three recognized exceptions to the final judgment rule: the collateral order exception, the death knell exception, and the judicial economy exception. *Id.* ¶¶ 6–8, 912 A.2d at 1257–58.

[¶ 5]   Because the court has yet to make a final determination as to Kingsbury's heirs, the Estate acknowledges that its appeal is interlocutory, but relies on the death knell exception to the final judgment rule to argue that we should nevertheless consider its appeal on the merits.   The death knell exception provides for appellate review of an interlocutory order when "substantial rights of a party will be irreparably lost if review is delayed until final judgment." *Id.* ¶ 8, 912 A.2d at 1258 (quotation marks omitted).   It applies "only to orders that, without an interlocutory appeal, result in a substantial loss or sacrifice of the rights, property, or claim at issue." *Id.* Only when "the injury to the plaintiff's claimed right would otherwise be imminent, concrete, and irreparable" will we review an interlocutory appeal pursuant to the death knell exception. *In re Bailey M.,* 2002 ME 12, ¶ 7, 788 A.2d 590, 594 (quotation marks omitted).   A right is irreparably lost "if we could not effectively provide a remedy to the appellant if we ultimately decided to vacate the interlocutory determination after a final judgment." *Id.* ¶ 8, 788 A.2d at 594.   Loss is not irreparable "if the harm is temporary and will only last for the duration of the litigation." *Id.*

[¶ 6]   We agree with the Estate that if it is not permitted to seek redress now, its right to prevent the exhumation of Kingsbury's remains will be irreparably lost.[2]   Although there is no property right

---

2.   We need not and do not decide whether the first alternative in the order—requiring Whorff to submit to genetic testing herself— is, by itself, sufficient to satisfy the death knell exception to the final judgment rule.   First, exhumation is also clearly part of the order being appealed, and thus we should not consider a two-part order as if it had only one part.   Second, the first alternative in the order requiring Whorff to submit to genetic *testing* mandates action on Whorff's part as an individual, whereas Whorff's involvement

in this litigation is in her capacity as personal representative of Kingsbury's estate.   Although the order appealed from implicates Whorff as an individual, she represents the Estate, and may challenge the exhumation portion of the court's order without regard to the other alternative in the order regarding her personally.   We also assume that operation of the order has been stayed pending appeal, given the nature of the order and the actions it authorizes.

to a dead body at common law, and once buried, a body comes within the "custody of the law," the next of kin nevertheless "do have a protectable interest in the body that would allow them to challenge a disinterment." *In re Estate of Medlen,* 286 Ill.App.3d 860, 222 Ill.Dec. 220, 677 N.E.2d 33, 35–36 (1997). If indeed the Estate has a right to prevent exhumation and genetic testing of Kingsbury's body and is barred from exercising it now, that right will be lost forever, and we could afford no adequate remedy for the violation of that right if the Probate Court's final judgment on MacMahan's petition was later vacated. The Estate's appeal thus satisfies the death knell exception to the final judgment rule, and we agree to consider the appeal on the merits despite its interlocutory nature.

B. Authority

■■■■■ [¶ 7] Although it concedes that the Probate Court has personal jurisdiction over the parties and subject matter jurisdiction over the type of action, the Estate nevertheless contends that the court lacks authority to order exhumation of Kingsbury's remains for genetic testing based on the absence of any statutory source of such authority.[3] The trial court's authority to undertake particular action, including an interpretation of the underlying statutory provisions, is an issue of law that we examine de novo. *Kilroy v. Ne. Sunspaces, Inc.,* 2007 ME 119, ¶ 6, 930 A.2d 1060, 1062. In analyzing the court's

statutory authority, we look first to the plain language of the provision at issue, *L'Heureux v. Michaud,* 2007 ME 149, ¶ 7, 938 A.2d 801, 803. Only if that provision is ambiguous do we consider other indicia of legislative intent, such as legislative history. *Id.* A statutory provision is deemed ambiguous if it is "reasonably susceptible to multiple interpretations." *Id.*

[¶ 8] The Probate Court's adjudicatory authority is set forth in two particular statutory provisions. First, the subject matter jurisdiction provision of the Probate Code vests the Probate Court with "full power to make orders, judgments and decrees and take all other action necessary and proper to administer justice in the matters which come before it." 18–A M.R.S. § 1–302(b) (2007). Second, section 252 of title 4 of the Maine Revised Statutes provides:

> The courts of probate shall have jurisdiction in equity, concurrent with the Superior Court, of all cases and matters relating to the administration of the estates of deceased persons, to wills and to trusts which are created by will or other written instrument. Such jurisdiction may be exercised upon complaint according to the usual course of proceedings in civil actions in which equitable relief is sought.

4 M.R.S. § 252 (2007).

■■■■■ [¶ 9] Both of these provisions vest the Probate Court with broad authority. By the plain language of sections 1–

---

3. Although the Estate argued in its brief that the court lacked jurisdiction to consider MacMahan's petition, it abandoned this contention during oral argument, and instead conceded that the Probate Court has both personal jurisdiction over Kingsbury's estate as a resident of Sagadahoc County at the time of his death, *see* 18–A M.R.S. § 1–301(1) (2007), and subject matter jurisdiction over MacMahan's petition in that it regards "subject matter relating to ... estates of de-

cedents, including construction of wills and determination of heirs and successors of decedents and estates of protected persons," *see* 18–A M.R.S. § 1–302(a) (2007). Further, 4 M.R.S. § 252 (2007) confers equity jurisdiction on the Probate Court, concurrent with the Superior Court, over "all cases and matters relating to the administration of the estates of deceased persons, to wills and to trusts which are created by will or other written instrument."

302(b) and 252, the Probate Court has equitable authority to decide all matters relating to the determination of Kingsbuiy's heirs and administration of his estate, and may take any action necessary to resolve such disputes properly before it. We do recognize that the authority of the Probate Court is not without limit, and that there must be good cause or sufficient reason advanced to justify exercise of such broad power. In this case, however, Mac-Mahan has presented an abundance of evidence that she is in fact Kingsbury's daughter, and that evidence creates at the very least a reasonable probability that genetic testing of Kingsbury's exhumed body, as ordered by the Probate Court, will reveal that MacMahan is the daughter of Kingsbury. Thus, the Probate Court was indeed authorized to order exhumation of Kingsbury's remains for the purpose of genetic testing in connection with MacMahan's petition.[4]

The entry is:

Judgment affirmed.

ALEXANDER, J., with whom SAUFLEY, C.J., and SILVER, J., join, dissenting.

[¶ 10] This case should not be about disturbing the remains of the deceased. And this Court should not involve itself in this interlocutory discovery dispute. Robin Whorff, the appellant, seeks to make this a case about disturbing her father's remains by refusing to submit a sample for simple, noninvasive DNA testing by providing a lock of her hair or some other similar means.

[¶ 11] Whorff is both the personal representative and a party-in-interest in this action. She is properly subject to a discovery request and order in either capaci-

ty. The Probate Court's discovery order gives Whorff the option of providing a sample appropriate for genetic testing. She acknowledges that her appeal of that order is interlocutory. The Probate Court could have directed Whorff to provide a sample for DNA testing or, alternatively, face a default on the issue that would be subject to the genetic test. Such an order, part of ongoing discovery that occurs in civil and criminal cases, should not justify an interlocutory appeal. Accordingly, I respectfully dissent from the Court's decision to reach the merits of this appeal.

[¶ 12] As the Court acknowledges in its opinion, the death knell exception to the final judgment rule permits appellate review of an interlocutory order only when "substantial rights of a party will be irreparably lost if review is delayed until final judgment." *Bruesewitz v. Grant*, 2007 ME 13, ¶ 8, 912 A.2d 1255, 1258. The death knell exception applies "only to orders that, without an interlocutory appeal, result in a substantial loss or sacrifice of the rights, property, or claim at issue." *Id*

[¶ 13] Having to give a small sample of one's hair or other similar, noninvasive sample does not cause a substantial or irreparable loss of a right, property, or claim. Because on appeal after a final judgment we can "effectively provide a remedy to the appellant if we ultimately decided to vacate the interlocutory determination after a final judgment," *see In re Bailey M.*, 2002 ME 12, ¶ 8, 788 A.2d 590, 594, the death knell exception to the final judgment rule cannot apply to this case. Whorff should be given the choice of providing the sample ordered by the Court or suffering a default on the issue. There is no need for her to cause her father's remains to be disturbed and use the prospect of that disturbance as a means to maintain

---

4. We are also not persuaded by the Estate's remaining contention, that MacMahan's peti- tion constitutes a time-barred paternity action pursuant to 19–A M.R.S. § 1554 (2007).

this interlocutory appeal. I would dismiss this appeal as interlocutory.